FILED
COURT OF APPEALS
DIVISION II

2014 OCT 21 AM 9: 12

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44811-4-II |
| Appellant, | |
| .v. | |
| | PUBLISHED OPINION |
| TOM ALLEN REEVES, | |
| Respondent. | |

MAXA, J. — The State appeals the trial court's dismissal pursuant to a *Knapstad*[1]
motion of the charge against Tom Allen Reeves for third degree retail theft with
extenuating circumstances. Under former RCW 9A.56.360(1)(b) (2006),[2] an extenuating
circumstance for retail theft includes being in possession of "an item, article, implement,
or device designed to overcome security systems including, but not limited to, lined bags
or tag removers." The evidence showed that Reeves used pliers to remove a security
device before shoplifting a security camera from Walmart. The trial court ruled that the
pliers was not a device designed to overcome security systems. We agree with the trial

---

[1] *State v. Knapstad*, 107 Wn.2d 346, 729 P.2d 48 (1986).

[2] The legislature amended RCW 9A.56.360, effective 2014, and changed "extenuating
circumstances" to "special circumstances". The amendment does not otherwise affect the
subsection cited. LAWS OF 2013 ch. 153, §1.

court and affirm the dismissal of the charge against Reeves for third degree retail theft with extenuating circumstances.

## FACTS

On February 15, 2013, a Walmart asset protection associate saw Reeves use pliers to cut the cables of a spider wrap security device that encased a surveillance camera set. The associate then watched as Reeves placed the surveillance camera set into a backpack and left the store. A Chehalis police officer subsequently arrested Reeves and recovered the backpack with the surveillance camera set inside.

The State charged Reeves with third degree retail theft with extenuating circumstances based on the theory that Reeves's use of pliers to remove the spider wrap was an extenuating circumstance. Reeves filed a pretrial *Knapstad* motion, arguing that the pliers was not a device designed to overcome retail security systems and therefore the use of pliers was insufficient to support the theft with extenuating circumstances charge. The trial court granted Reeves's motion, ruling that the pliers was not a device designed to overcome security systems. The trial court reasoned that including common tools into the definition of devices designed to overcome security systems would render every act of removing a security device an extenuating circumstance.

The State appeals.

## ANALYSIS

Under former RCW 9A.56.360(1)(b), a person commits retail theft with extenuating circumstances if he or she commits theft from a mercantile establishment and "the person was, at the time of the theft, in possession of an item, article, implement, or device *designed* to overcome

2

security systems including, but not limited to, lined bags or tag removers" (emphasis added).

The State argues that former RCW 9A.56.360(1)(b) criminalizes possession of any tool,

including pliers, used with the intent to overcome a security device. We disagree and hold that

ordinary pliers is excluded from the definition of "item, article, implement, or device designed to

overcome security systems" in former RCW 9A.56.360(1)(b).

A.      STANDARD OF REVIEW

To prevail on a *Knapstad* motion, a defendant must show that there are no material

disputed facts and the undisputed facts do not establish a prima facie case of guilt. *State v.

O'Meara*, 143 Wn. App. 638, 642, 180 P.3d 196 (2008). We review a trial court's dismissal of a

criminal charge under a *Knapstad* motion de novo, considering the facts and reasonable

inferences in the light most favorable to the State. *State v. Newcomb*, 160 Wn. App. 184, 188-

89, 246 P.3d 1286 (2011).

The trial court's dismissal was based on its interpretation of former RCW

9A.56.360(1)(b). We also review questions of statutory interpretation de novo. *State v. Ervin*,

169 Wn.2d 815, 820, 239 P.3d 354 (2010).

B.      PRINCIPLES OF STATUTORY INTERPRETATION

We employ statutory interpretation "to determine and give effect to the intent of the

legislature." *State v. Evans*, 177 Wn.2d 186, 192, 298 P.3d 724 (2013) (quoting *State v. Sweany*,

174 Wn.2d 909, 914, 281 P.3d 305 (2012)). To determine legislative intent, we first look to the

plain language of the statute considering the text of the provision in question, the context of the

statute, and the statutory scheme as a whole. *Evans*, 177 Wn.2d at 192. We give undefined

terms their plain and ordinary meaning unless a contrary legislative intent is indicated. *Ervin*, 169 Wn.2d at 820.

If the plain language of the statute is susceptible to more than one reasonable interpretation, the statute is ambiguous. *Ervin*, 169 Wn.2d at 820. We first attempt to resolve the ambiguity and determine the legislature's intent by resorting to other indicia of legislative intent, including principles of statutory construction, legislative history, and relevant case law. *Ervin*, 169 Wn.2d at 820. If these indications of legislative intent are insufficient to resolve the ambiguity, under the rule of lenity we must interpret the ambiguous statute in favor of the defendant. *Evans*, 177 Wn.2d at 192-93. We will construe an ambiguous criminal statute against the defendant only where the principles of statutory construction clearly establish that the legislature intended such an interpretation. *Evans*, 177 Wn.2d at 193.

C.    LANGUAGE OF FORMER RCW 9A.56.360

We first examine the plain language of the phrase "item, article, implement, or device *designed* to overcome security systems" in former RCW 9A.56.360(1)(b) (emphasis added). If a word is not specifically defined by statute, we derive the plain meaning of non-technical words using dictionary definitions. *State v. Kintz*, 169 Wn.2d 537, 547, 238 P.3d 470 (2010). The State relies on Webster's definition of "designed" as "done, performed, or made with purpose and intent." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 612 (2002) (WEBSTER'S). However, the singular term "design" has multiple definitions.[3] WEBSTER'S at 611-12.

---

[3] The word can be used as a verb, noun, or even adjective. WEBSTER'S at 611-12. All forms come from the same common Latin root, *designare*. WEBSTER'S at 611. Former RCW 9A.56.360(1)(b) uses the verb form of the word, but the definitions of the noun form are also instructive for our interpretive purposes.

4

Different dictionary definitions of "design," the root word of "designed," support the differing interpretations that the State and Reeves advocate. One definition of "design" is "to create, fashion, execute, or construct according to plan." WEBSTER'S at 611. This definition supports Reeves' argument that former RCW 9A.56.360(1)(b) applies only if a device is specifically constructed to overcome a security system. But another definition is "a particular purpose held in view by an individual." WEBSTER'S at 611. This definition supports the State's argument that former RCW 9A.56.360(1)(b) applies if the defendant intends to use a device to overcome security systems.

The meaning of former RCW 9A.56.360(1)(b) is unclear in part because the statute does not indicate to *whom* the term "designed" refers. Adding the phrase "by the manufacturer" after the term "designed" suggests a different meaning than adding the phrase "by the defendant" after the term "designed."

Because the phrase "item, article, implement, or device designed to overcome security systems" is susceptible to two reasonable interpretations, we hold that former RCW 9A.56.360(1)(b) is ambiguous with regard to whether pliers falls within the statutory language.

D.    RESOLVING STATUTORY AMBIGUITY

Because the language of former RCW 9A.56.360(1)(b) is ambiguous, we first turn to the principles of statutory construction, the legislative history, and the statutory scheme to determine the legislature's intent. If this analysis still does not clearly show the legislature's intent, the rule of lenity requires us to interpret the statute in Reeves's favor. *Evans*, 177 Wn.2d at 193.

5

1. Statutory Construction

Two statutory construction principles favor interpreting former RCW 9A.56.360(1)(b) as applying only to devices made specifically for the purpose of overcoming security systems and not to ordinary devices the defendant uses to overcome security systems.

First, we recognize that "specific words modify and restrict the meaning of general words when they occur in a sequence." *State v. Gonzales Flores*, 164 Wn.2d 1, 13, 186 P.3d 1038 (2008) (describing the statutory interpretation principle of ejusdem generis).[4] Here, the legislature specifically listed lined bags and tag removers as examples of an "item, article, implement, or device designed to overcome security systems." Former RCW 9A.56.360(1)(b). Although neither the statute nor the legislative history defines "lined bags" or "tag removers," they appear to be devices that have little utility aside from blocking a store security scanner or removing retail security tags. The fact that the legislature provided these specific examples suggests that the general terms should be given a similar interpretation: devices that have a primary purpose of facilitating retail theft. This interpretation would not include ordinary pliers, which have many purposes independent of retail theft.

Second, we may compare the wording of statutes that "relate to the same person or thing, or the same class of persons or things." *See In re Yim*, 139 Wn.2d 581, 592, 989 P.2d 512 (1999) (quoting *State v. Houck*, 32 Wn.2d 681, 684, 203 P.2d 693 (1949)). We therefore look to other criminal statutes describing the use of tools for specific purposes. The legislature used broad

---

[4] Similarly, we read words in context – "the meaning of a word may be indicated or controlled by a reference to associated words." *Gonzales Flores*, 164 Wn.2d at 12 (explaining the statutory interpretation principle of noscitur a sociis).

language when criminalizing the possession or use of burglar tools, defining such tools as an "implement adapted, designed or *commonly used*" for the commission of burglary. RCW 9A.52.060(1) (emphasis added). The legislature adopted identical language when defining motor vehicle theft tools in RCW 9A.56.063(1). If the legislature had intended to criminalize the possession of *any* device a defendant used to overcome security systems, it could have included similar broad language in former RCW 9A.56.360(1)(b). Instead the legislature used the precise word "designed" rather than the more general word "used," suggesting that it did not intend "designed" to mean "used." The State's interpretation of "designed" as synonymous with "used" is inconsistent with the legislature's use of a precise word to deliberately convey a different meaning in the burglary and theft tools statutes.

2. Legislative History/Statutory Scheme

The minimal legislative history of former RCW 9A.56.360 and the statutory scheme do not strongly support either Reeves's or the State's arguments. However, they do provide some support for interpreting former RCW 9A.56.360(1)(b) as applying only to devices made specifically for the purpose of overcoming security systems and not to ordinary devices a defendant intends to use to facilitate retail theft.

According to both the Senate and House bill reports, testimony in favor of the bill that included former RCW 9A.56.360 indicated that the legislation was necessary to combat organized thieves who attack stores in concert, against whom anti-theft devices are ineffective. S.B. REP. on H.B. 2704, at 2, 59th Leg., Reg. Sess. (Wash. 2006); H.B. REP. on H.B. 2704, at 4, 59th Leg., Reg. Sess. (Wash. 2006). The testimony stated that organized retail theft is not the same as traditional shoplifting. H.B. REP. on H.B. 2704, at 4. We might assume that organized

7

thieves would use more specialized tools than traditional shoplifters, but there is nothing in the legislative history that specifically addresses former RCW 9A.56.360(1)(b) or the use of devices designed to overcome security systems.

However, the overall statutory scheme reflects the legislature's intent to target sophisticated thieves. In addition to enacting retail theft with extenuating circumstances, the legislature enacted the theft-related crimes of theft with intent to resell, RCW 9A.56.340, and organized retail theft, RCW 9A.56.350. FINAL B. REP. on H.B. 2704, 59th Leg., Reg. Sess. (Wash. 2006). The legislature also added theft with intent to resell and organized retail theft to the definition of "criminal profiteering" under the Criminal Profiteering Act, former RCW 9A.82.010 (2012).[5] FINAL B. REP. on H.B. 2704. Arguably, criminalizing tools specifically made to facilitate theft, such as lined bags and tag removers, is more consistent with the legislature's intent to target sophisticated thieves than with criminalizing the use of ordinary tools such as pliers.

3.    Rule of Lenity

Principles of statutory construction and an analysis of the legislative history and statutory scheme do not resolve the ambiguity in former RCW 9A.56.360(1)(b) in the State's favor. If anything, these interpretive aids tend to support interpretation of the statute in Reeves's favor. They definitely do not "clearly establish" that the legislature intended the phrase "item, article, implement, or device designed to overcome security systems" to include *any* device – including ordinary pliers – a person uses to overcome security systems to commit retail theft.

---

[5] RCW 9A.82.010 was amended in August 2013, but the provisions at issue here were unchanged. LAWS OF 2013, ch. 302, §10.

Because former RCW 9A.56.360(1)(b) is an ambiguous criminal statute, the rule of lenity applies and we must strictly construe the statute in Reeves's favor. *Evans*, 177 Wn.2d at 193. Accordingly, we hold that former RCW 9A.56.360(1)(b) does not apply to Reeves's use of ordinary pliers to remove a security device.

We affirm the trial court's dismissal of the charge against Reeves for third degree retail theft with extenuating circumstances.

MAXA, J.

We concur:

WORSWICK, P.J.

LEE, J.