IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 32168-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MAXIMINO CASTILLO-MURCIA, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

BROWN, J. — Maximino Castillo-Murcia appeals his convictions for luring, communicating with a minor for immoral purposes, and indecent exposure. Mr. Castillo-Murcia contends (1) insufficient evidence supports the "unknown" element of RCW 9A.40.090(1)(c) to establish luring and (2) his jury waiver is invalid. We disagree with both contentions and affirm.

## FACTS

On April 17, 2013, 13-year-old J.M.A.-H. was playing basketball in a Kennewick, Washington park with M.S. and H.A. Mr. Castillo-Murcia, an ice cream truck operator, drove to the park. J.M.A.-H. recognized Mr. Castillo-Murcia as the ice cream man. J.M.A.-H. testified she had spoken with Mr. Castillo-Murcia on two prior occasions, but beyond exchanging greetings, she knew nothing about him. On one of those

occasions, Mr. Castillo-Murcia gave J.M.A.-H. a free ice cream. Mr. Castillo-Murcia testified his interactions with J.M.A.-H. were more detailed and numerous.

J.M.A.-H. and H.A. approached the truck while M.S. left to get money. After Mr. Castillo-Murcia gave J.M.A.-H. and H.A. free ice cream, H.A. left, leaving J.M.A.-H. alone with Mr. Castillo-Murcia. Mr. Castillo-Murcia then told J.M.A.-H. she was pretty, had a nice body, and he wished she was his son's girlfriend. He asked to see her phone and tried to hold her hand when she handed it to him. He asked her to turn around several times before inviting her into his truck. He offered her hot Cheetos or anything she wanted if she got into the truck, but, despite her refusal to get in the truck, he gave her the Cheetos. When H.A. returned, Mr. Castillo-Murcia told J.M.A.-H. to ask H.A. to leave, but J.M.A.-H. refused. At this point, J.M.A.-H. saw Mr. Castillo-Murcia masturbating through a window shelf. J.M.A.-H. threw her ice cream and Cheetos at Mr. Castillo-Murcia, grabbed H.A., and ran away.

The following day, J.M.A.-H. reported the incident to her school's security officer. When two police officers picked J.M.A.-H. up to drive her around the area so she could identify the man, she identified Mr. Castillo-Murcia.

Mr. Castillo-Murcia signed a jury waiver. Despite the fact a Spanish interpreter was present during pretrial proceedings and was requested for trial, the court questioned Mr. Castillo-Murcia about his waiver without an interpreter present. The court convicted Mr. Castillo-Murcia of luring, communication with a minor for immoral purposes, and indecent exposure. Mr. Castillo-Murcia appealed.

2

ANALYSIS

A. Whether Mr. Castillo-Murcia was "unknown" to J.M.A.-H.

The issue is whether sufficient evidence supports Mr. Castillo-Murcia's luring conviction. He contends the State failed to prove he was "unknown" to J.M.A.-H. as required by RCW 9A.40.090(1)(c). Mr. Castillo-Murcia assigned error to findings of fact 5, 6, 9, and 10 but does not separately argue them; the facts are included in our facts recitation because each is supported by evidence in our record.

Evidence is sufficient to support a guilty finding if "'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (emphasis omitted) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). An evidence sufficiency challenge "admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We defer to the fact finder's assessment of conflicting testimony, witness credibility, and evidence weight. *State v. Carver*, 113 Wn.2d 591, 604, 781 P.2d 1308, 789 P.2d 306 (1989).

A person commits the crime of luring if he attempts to lure a minor into a motor vehicle, does not have the consent of the minor's parent, and is unknown to the minor. RCW 9A.40.090(1). The sole element at issue in this appeal is whether Mr. Castillo-Murcia was "unknown" to J.M.A.-H. Neither RCW 9A.40.090 nor any Washington cases

discuss the meaning of "unknown." Thus, we must interpret what the legislature meant by using the word "unknown."

"Questions of statutory interpretation are questions of law that are reviewed de novo." *Bostain v. Food Express, Inc.*, 159 Wn.2d 700, 708, 153 P.3d 846 (2007). Statutory interpretation is used "to determine and give effect to the intent of the legislature." *State v. Reeves*, 184 Wn. App. 154, 158, 336 P.3d 105 (2014) (quoting *State v. Evans*, 177 Wn.2d 186, 192, 298 P.3d 724 (2013)). To determine the intent of the legislature, appellate courts "first look to the plain language of the statute considering the text of the provision in question, the context of the statute, and the statutory scheme as a whole." *Id.* Undefined terms are given "their plain and ordinary meaning unless a contrary legislative intent is indicated." *Id.* Dictionary definitions help when dealing with nontechnical statutory terms. *State v. Kintz*, 169 Wn.2d 537, 547, 238 P.3d 470 (2010).

A statute is ambiguous if its plain language is susceptible to more than one reasonable interpretation. *Reeves*, 184 Wn. App. at 158. In resolving the ambiguity, appellate courts "resort[ ] to other indicia of legislative intent, including principles of statutory construction, legislative history, and relevant case law." *Id.* If legislative intent still cannot be determined, we must interpret the ambiguous statute in favor of the defendant pursuant to the rule of lenity. *Id.* at 158-59.

"Unknown" is defined as "not known: such as strange, unfamiliar." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2502 (1993). This definition seemingly supports

4

Mr. Castillo-Murcia's argument that he is not unknown to J.M.A.-H. because he is familiar to her. But another definition of "unknown" is "lacking an established or normal status[;] having no formal recognition." *Id.* This definition supports the State's argument that Mr. Castillo-Murcia was unknown to J.M.A.-H. because she merely recognized him as the "ice cream man" and had two limited interactions with him. Without more, RCW 9A.40.090 could be considered ambiguous.

However, when we look to the statutory context of RCW 9A.40.090, it is clear the legislature intended "unknown" to be interpreted in the manner posited by the State. RCW 9A.04.020 states:

> (1) The general purposes of the provisions governing the definition of offenses are:
> (a) To forbid and prevent conduct that inflicts or threatens substantial harm to individual or public interests;
> (b) To safeguard conduct that is without culpability from condemnation as criminal;
> (c) To give fair warning of the nature of the conduct declared to constitute an offense;
>  . . . .
> (2) The provisions of this title shall be construed according to the fair import of their terms but when the language is susceptible of differing constructions it shall be interpreted to further the general purposes stated in this title.

Ultimately, the luring statute seeks to prevent harm to vulnerable minors from those people with whom the minors have no relationship. If RCW 9A.40.090 is read as Mr. Castillo-Murcia suggests, the statute does not further the general purposes of chapter 9A RCW. RCW 9A.40.090 is clearly aimed at culpable conduct similar to Mr. Castillo-Murcia's, which can and did cause substantial harm to J.M.A.-H. The purposes

of the statute are not furthered by excepting a class of individuals from the luring statute who cultivated a brief superficial relationship with a minor.

Moreover, even if the meaning of "unknown" was ambiguous, the State's interpretation is further supported when looking at principles of statutory construction. First, "[w]here the legislature uses certain statutory language in one statute and different language in another, a difference in legislative intent is evidenced." *In re Forfeiture of One 1970 Chevelle*, 166 Wn.2d 834, 842, 215 P.3d 166 (2009). Thus, when the legislature uses different words, appellate courts "deem the legislature to have intended different meanings." *Id.* The legislature used the word "unknown"; it did not use the word "stranger," which is defined in RCW 9.94A.030(50) as someone the victim did not know 24 hours before the offense. That the legislature did not use the word "stranger" lends further credence to the State's position. Moreover, it would be absurd to draw the line at saying a person is known to a minor merely because they have said "hello" during a business transaction. *See State v. McDonald*, 183 Wn. App. 272, 278, 333 P.3d 451 (2014) (appellate courts "must avoid constructions that yield unlikely, strange or absurd consequences") (quoting *State v. Contreras*, 747, 880 P.2d 1000 (1994)).

Despite this, Mr. Castillo-Murcia relies on four cases to argue "unknown" means a stranger or someone the victim has not seen before. *See State v. Homan*, 181 Wn.2d 102, 330 P.3d 182 (2014); *State v. McReynolds*, 142 Wn. App. 941, 176 P.3d 616 (2008); *State v. McSorley*, 128 Wn. App. 598, 116 P.3d 431 (2005); *State v. Dana*, 84 Wn. App. 166, 926 P.2d 344 (1996). But those cases are all factually dissimilar as no

6

factual dispute existed over whether the defendants were "unknown" to the victims. *Homan*, 181 Wn.2d at 107; *McReynolds*, 142 Wn. App. at 944, 948; *McSorley*, 128 Wn. App. at 433-39; *Dana*, 84 Wn. App. at 169-70, 174, 177-78. Thus, no need arose to discuss what the legislature intended by using "unknown."

When "unknown" is understood to mean "lacking an established or normal status," Mr. Castillo-Murcia's sufficiency of the evidence challenge fails. Admitting the truth of the State's evidence shows the following: (1) J.M.A.-H. recognized Mr. Castillo-Murcia only as the ice cream man who drove around her house, (2) on two prior occasions, J.M.A.-H. had talked with Mr. Castillo-Murcia but this conversation was limited to him asking her where she lived and giving her a free ice cream, (3) J.M.A.-H. exchanged greetings with Mr. Castillo-Murcia on the day in question, and (4) J.M.A.-H. recognized Mr. Castillo-Murcia two days after the incident. As the trial court noted, J.M.A.-H. solely knew Mr. Castillo-Murcia as the ice cream man and exchanged pleasantries with him; she did not know any other information about him. Mr. Castillo-Murcia was "unknown" to J.M.A.-H. Sufficient evidence supports his luring conviction.

B.   Whether Mr. Castillo-Murcia's jury waiver was valid.

The issue is whether Mr. Castillo-Murcia validly waived his right to a jury trial. Mr. Castillo-Murcia contends his waiver was not knowing, intelligent, and voluntary because (1) no interpreter was present during his oral waiver, (2) his signed waiver was in English, and (3) his written waiver was signed shortly after the trial court rejected defense counsel's motion to withdraw.

7

Criminal defendants have the right to a jury trial under both the Washington and federal constitution. *State v. Ramirez-Dominguez*, 140 Wn. App. 233, 239, 165 P.3d 391 (2007). Because waiver of the right to a jury trial is a constitutional right, our review is de novo. *Id.* A waiver is valid if the defendant acted knowingly, intelligently, and voluntarily. *State v. Pierce*, 134 Wn. App. 763, 771, 142 P.3d 610 (2006). Appellate courts do not presume the defendant waived his right to a jury trial unless there is "an adequate record showing that the waiver occurred." *Id.* Because Washington only requires a personal expression of waiver from the defendant, the right to a jury trial is easier to waive than other constitutional rights. *Id.* at 771-72.

The State must prove the waiver was valid. *Ramirez-Dominguez*, 140 Wn. App. at 240. We consider several factors in deciding whether a defendant validly waived a jury trial: (1) whether the trial court informed the defendant of the right to a jury trial, (2) whether the defendant signed a written waiver, and (3) whether defense counsel affirmatively stated the defendant waived the right. *Pierce*, 134 Wn. App. at 771. As to the first factor, a trial court is not required to conduct an extended colloquy with the defendant. *Id.* As to the second factor, a written waiver "is strong evidence that the defendant validly waived the jury trial right." *Id.* The defendant's experience and capabilities are also taken into consideration. *Ramirez-Dominguez*, 140 Wn. App. at 240.

Mr. Castillo-Murcia argues an interpreter needed to be present at the colloquy where he waived his jury trial right because there is nothing in the record to gauge his

comprehension of the English language; to support this, he points to the presence of an interpreter at all pretrial proceedings and trial. Contrary to Mr. Castillo-Murcia's assertion, the record before us indicates he had an adequate grasp of the English language. During the colloquy, he unequivocally answered "yes" to each of the court's questions. He confirmed he wanted to waive his right, he wanted to have his case tried to a judge, and he understood one person instead of a unanimous 12 would decide his case. While on the witness stand, Mr. Castillo-Murcia had to be asked to wait for the interpreter to translate before he answered counsel's questions. At sentencing, without the assistance of an interpreter, Mr. Castillo-Murcia made an extended speech in English where he expressed how the trial affected his family, maintained his innocence, and explained why he thought his trial was unfair. Again without the use of an interpreter, he responded to the court during sentencing. His English language skills, coupled with his written waiver, strongly evidences waiver.

Regarding Mr. Castillo-Murcia's argument the trial court was required to extensively discuss his waiver and ask whether defense counsel explained the waiver to him, Washington law does not require an extended waiver discussion, instead only requiring the defendant personally express his desire to waive his right to a jury trial. The court told him of his right to a jury trial and the principal effect of giving up his right. And inquiring whether defense counsel explained the right is but one factor we consider in determining waiver validity; failure to so inquire is not fatal. Mr. Castillo-Murcia's suggests the timing of his waiver is suspicious considering his lawyer's effort to

9

withdraw. A lawyer is ethically required to represent a client with diligence. Rules of Prof'l Conduct R. 1.3 cmt. 4 (2014). Valid reasons exist for not wanting a jury trial. Nothing in the record suggests his lawyer acted without diligence or provided ineffective assistance of counsel. Considering all, we conclude his waiver was valid.

Affirmed.

_____
Brown, J.

WE CONCUR:

_____        _____
Siddoway, C.J.                          Korsmo, J.

10