IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| K.M.P., a minor child, by and through her natural mother and custodial parent, SARAH HALL PINHO, an individual, | ) ) ) ) | No. 80293-3-I |
| Respondents, | ) ) | |
| v. | ) ) | |
| BIG BROTHER BIG SISTERS OF PUGET SOUND and MICHAEL WAYNE SANCHEZ, | ) ) ) ) | UNPUBLISHED OPINION |
| Appellant. | ) ) ) | |

VERELLEN, J. — When a minor child tells their caregiver that they have been abused and the caregiver relays that information to police, both the child and the caregiver are "persons" communicating information to police entitled to immunity under the anti-SLAPP statute, RCW 4.24.510.[1]

The alleged abuser's argument that the child's statement to her caregiver is not covered by the anti-SLAPP statute fails. To require a minor child to call 911 herself to acquire immunity would be an absurd result. The child is entitled to immunity against the abuser's defamation claim based upon her comments to her caregiver.

_____

[1] The acronym SLAPP stands for strategic lawsuit against public participation.

The trial court did not abuse its discretion in issuing CR 11 sanctions against the defendant's attorney or denying the attorney's motion to withdraw.

As the prevailing party on appeal, the child is entitled to attorney fees under RCW 4.24.510.

Therefore, we affirm.

FACTS

On April 29, 2016, nine-year-old KMP joined her "big sister" from Big Brothers Big Sisters of Puget Sound (BBBS) for a trip to a local lake.[2] KMP and her "big sister" walked to the dock where people were fishing. Michael Sanchez, one of the fisherman, caught a fish and asked KMP if she wanted to reel it in. KMP agreed, and Sanchez "positioned [her] right in front" of him "so he was right behind her" holding on to the pole. Soon after, KMP knelt down beside the lake to rinse her hands, and Sanchez "held on to her jacket."[3] Later, Sanchez approached KMP again so he could tie a longer string to her fish.

About 15 minutes later, KMP told her "big sister" that Sanchez had "inappropriately touched" her on her "privates."[4] Moments later, her "big sister" received a phone call from Sarah Pinho, KMP's mother. Her "big sister" told Pinho

---

[2] "Big Brothers Big Sisters of Puget Sound is a youth-serving nonprofit in Washington [s]tate. Its mission is to provide children facing adversity with strong and enduring, professionally supported one-on-one relationships that change their lives for the better. Big Brothers Big Sisters of Puget Sound makes monitored matches between adult volunteers ("Bigs") and children ("Littles"), ages 6 through 18." Appellant's Br. at 5.

[3] Clerk's Papers (CP) at 808.

[4] CP at 183.

2

what happened and then called the police after Pinho urged her to. Within minutes, the police arrived and KMP told them Sanchez touched her inappropriately.

On July 25, 2017, KMP sued her "big sister" and BBBS for negligence and sued Sanchez for sexual battery. The trial court dismissed her "big sister," and BBBS settled with KMP. Sanchez entered an Alford[5] plea to the charge of attempted second degree child molestation. As a result of Sanchez's guilty plea, KMP moved to dismiss her sexual battery claim against Sanchez. Sanchez objected and filed various counterclaims against KMP.[6]

When Sanchez filed his counterclaims, he was also a respondent in a sexually violent predator (SVP) civil commitment proceeding. One of Sanchez's attorney's in the SVP case, Kenneth Henrikson, assisted Sanchez in drafting and filing pleadings in his civil action against KMP, until his superiors insisted that he terminate the representation. Henrikson asked his former colleague, Kenneth Chang, to represent Sanchez.

In March 2019, KMP's counsel met with Chang and provided him with deposition transcripts from KMP's sexual battery case and a copy of RCW 4.24.510, the anti-SLAPP statute. KMP's counsel told Chang that if Sanchez did not agree to terminate the litigation, KMP would seek both the statutory remedies provided by RCW 4.24.510 and CR 11 sanctions against Chang.

---

[5] North Carolina v. Alford, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[6] The only counterclaim at issue on appeal is defamation.

Soon after, KMP filed a motion for summary judgment, arguing that Sanchez had insufficient evidence to establish a prima facie case of his defamation counterclaim and that, under RCW 4.24.510, she was immune from all counterclaims arising from her report of sexual abuse.

The trial court granted KMP's motion for summary judgment. The trial court concluded that KMP was immune from civil liability under RCW 4.24.510 because "without evidence of any malice or of any ill-content" there was no evidence "that a child could be liable for reporting abuse to her caregivers."[7] As a result, the trial court ordered Sanchez to pay $10,000 in statutory damages under RCW 4.24.510 and Chang to pay $4,000 in CR 11 sanctions.

Sanchez appeals.

<u>ANALYSIS</u>

I. <u>Immunity from civil liability under RCW 4.24.510</u>

Sanchez contends that KMP is not entitled to immunity or statutory damages under RCW 4.24.510 because the statute does not apply to conversations between private persons. Specifically, Sanchez argues that KMP's communication of sexual abuse to her "big sister" was not protected speech under section .510 because the statute can only immunize KMP's direct statements to police.

---

[7] RP (Sept. 16, 2019) at 85.

"We review an order granting summary judgment de novo."[8]  Summary judgment is appropriate "'only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.'"[9]  We view the evidence in the "light most favorable to the non-moving party."[10]  "The party opposing a motion for summary judgment may not rely on speculation [or] on argumentative assertions that unresolved factual issues remain."[11]  "Ultimate facts or conclusions of fact are insufficient; conclusory statements of fact will not suffice."[12]

We interpret a statute based on the statute's plain meaning and the legislature's intent.[13]

The anti-SLAPP statute, RCW 4.24.510, provides:

> A person who communicates a complaint or information to any branch or agency of federal, state, or local government . . . is immune from civil liability for claims based upon the communication to the agency or organization regarding any matter reasonably of concern to that agency or organization.  A person prevailing upon the defense provided for in this section is entitled to recover expenses and reasonable attorneys' fees incurred in establishing the defense

---

[8] Loeffelholz v. Univ. of Wash., 175 Wn.2d 264, 271, 285 P.3d 854 (2012) (quoting Mohr v. Grantham, 172 Wn.2d 844, 859, 262 P.3d 490 (2011)).

[9] Bavand v. OneWest Bank, 196 Wn. App. 813, 824-25, 385 P.3d 233 (2016) (citing Scrivener v. Clark Coll., 181 Wn.2d 439, 444, 334 P.3d 541 (2014)).

[10] Loeffelholz, 175 Wn.2d at 271.

[11] Seiber v. Poulsbo Marine Ctr., Inc., 136 Wn. App. 731, 736, 150 P.3d 633 (2007 (citing Seven Gables Corp. v. MGM/UA Entm't Co., 106 Wn.2d 1, 13, 721 P.2d 1 (1986)).

[12] Id. at 737 (citing Grimwood  v. Univ. of Puget Sound, 110 Wn.2d 355, 359-60, 753 P.2d 517 (1988)).

[13] State v. Reeves, 184 Wn. App. 154, 158, 336 P.3d 105 (2014) (citing State v. Ervin, 169 Wn.2d 815, 820, 239 P.3d 354 (2010)).

and in addition shall receive statutory damages of ten thousand dollars. Statutory damages may be denied if the court finds that the complaint or information was communicated in bad faith. [14]

The purpose of RCW 4.24.510 is to protect citizens who come forward with information that will help make law enforcement and government more efficient and more effective.[15]

Because KMP did not initially communicate the sexual abuse to the police, Sanchez relies upon the phrase "person who communicates . . . information to . . . government" to argue KMP is ineligible for statutory immunity or a $10,000 damage award. But adopting Sanchez's interpretation of section .510 would undermine the legislature's intent.

Specifically, the use of the singular "person" can also be read as "people" or "persons."[16] Thus, the legislature intended to shield multiple "persons" who may be making a single report or communication.[17] Here, KMP's report of sexual abuse to her "big sister" and her "big sister"'s report to the police on behalf of KMP constituted a single communication. By interpreting "person" in the plural to encompass both the caregiver or parent and the minor child relying on the caregiver or parent to make a report, the statute's terms better effectuate the

---

[14] RCW 4.24.510.

[15] Lowe v. Rowe, 173 Wn. App. 253, 259, 294 P.3d 6 (2012); Segaline v. Dep't of Labor & Indus., 169 Wn.2d 467, 479, 238 P.3d 1107 (2010).

[16] See RCW 1.12.050 (when reading statutes, "[w]ords importing the singular number may also be applied to the plural of persons and things."); see also Leishman, No. 97734-8, slip op. at 6-7.

[17] See Leishman, No. 97734-8, slip op. at 8-9.

legislature's intent.

Further, we do not derive the legislature's intent from the statute's words alone because we also consider "the context of the entire act as well as any 'related statutes which disclose legislative intent about the provision in question.'"[18] A closely related statute, the child abuse reporting statute, provides immunity to:

> any person participating in good faith in the making of a report . . . in connection with a report, investigation, or legal intervention pursuant to a good faith report of child abuse or neglect shall in so doing be immune from any civil or criminal liability arising out of such reporting.[19]

This statute plainly shields KMP from liability because her "big sister"'s report to the police occurred only because KMP told her about Sanchez's abuse. Interpreting RCW 4.24.510 to extend immunity to a minor child who reports sexual abuse to a caregiver or a parent, who in turn relays that report to police, aligns

---

[18] Jametsky v. Olsen, 179 Wn.2d 756, 762, 317 P.3d 1003 (2014) (quoting Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 11, 43 P.3d 4 (2002)).

[19] RCW 26.44.060.  Public policy clearly supports that caregivers report allegations of child abuse to law enforcement.  In addition to the mandatory reporting requirements of RCW 26.44.030(1)(a), "[w]hen any practitioner, county coroner or medical examiner, law enforcement officer, professional school personnel, registered or licensed nurse, social service counselor, psychologist, pharmacist, employee of the department of children, youth, and families, licensed or certified child care providers or their employees, employee of the department of social and health services, juvenile probation officer, placement and liaison specialist, responsible living skills program staff, HOPE center staff, state family and children's ombuds or any volunteer in the ombud's office, or host home program has reasonable cause to believe that a child has suffered abuse or neglect, he or she shall report such incident, or cause a report to be made, to the proper law enforcement agency or to the department as provided in RCW 26.44.040."  The legislature also promotes that "[a]ny other person who has reasonable cause to believe that a child has suffered abuse or neglect may report such incident to the proper law enforcement agency or to the department as provided in RCW 26.44.040."  RCW 26.44.030(3) (emphasis added).

with the legislature's intent to provide immunity to "any person [or persons] participating" in reporting child abuse to police.

And to conclude otherwise would produce an absurd result. We decline to read the plain language of the statute to generate an absurd result, "'even if [we] must disregard unambiguous statutory language to do so.'"[20] Requiring a minor child who is a victim of sexual abuse to directly call 911 to receive the immunity protection of section .510 would be an absurd result. KMP is both immune from civil liability and entitled to $10,000 in statutory damages under section .510.[21]

Sanchez argues that KMP loses the immunity protection and the resulting statutory damages under section .510 because her allegation of sexual abuse was made in bad faith.

Bad faith is defined as acting with "dishonesty of belief, purpose, or motive."[22] And bad faith can be established through a showing of actual malice.[23] But "[i]ndividual factors that evidence actual malice are not generally sufficient to establish actual malice. For example, hostility alone will not constitute actual malice."[24]

---

[20] Samish Indian Nation v. Wash. Dep't of Licensing, 14 Wn. App. 2d 437, 444, 471 P.3d 261 (2020) (quoting In re Dep. of D.L.B., 186 Wn.2d 103, 119, 376 P.3d 1099 (2016).

[21] Because we find that KMP is entitled to immunity under RCW 4.24.510, we need not address Sanchez's defamation counterclaim.

[22] BLACK'S LAW DICTIONARY 171 (11th ed. 2019).

[23] Lillig v. Becton-Dickinson, 105 Wn.2d 653, 657, 717 P.2d 1371 (1986).

[24] Herron v. KING Broad. Co., 109 Wn.2d 514, 524-25, 746 P.2d 295 (1987), clarified on reh'g, 112 Wn.2d 762, 776 P.2d 98 (1989).

Specifically, Sanchez contends that his perception of KMP's actions at the time of the incident establish that KMP's allegation of sexual abuse was made in bad faith. Sanchez recalled that KMP was "frightened or upset" when he told her that she could not hold his fishing pole by herself, and that she acted "disgust[ed]" when he told her she could eat the fish.[25] But because Sanchez presented mere subjective evidence of individual factors of alleged actual malice, his evidence of bad faith was insufficient.

II. CR 11 sanctions and motion for continuance and leave to withdraw

Sanchez argues that the trial court erred in entering CR 11 sanctions against Chang because the court failed to "specify which filings violated CR 11" in its "findings."[26]

We review a trial court's imposition of CR 11 sanctions and denial of a motion for continuance and leave to withdraw for abuse of discretion.[27] A trial court abuses its discretion when its decision is based on untenable grounds or reasons.[28]

> CR 11 requires attorneys to date and sign all pleadings, motions and legal memoranda. Such signature constitutes the attorney's certification that: "to the best of the . . . attorney's knowledge, information, and belief, formed after reasonable inquiry it [the pleading motion or memoranda] is well grounded in fact and is warranted by

---

[25] CP at 878.

[26] Appellant's Br. at 17.

[27] Biggs v. Vail, 124 Wn.2d 193, 197, 876 P.2d 448 (1994); State v. Downing, 151 Wn.2d 265, 272, 87 P.3d 1169 (2004).

[28] State v. Guevara Diaz, 11 Wn. App. 2d 843, 856, 456 P.3d 869 (citing State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995)), review denied, 195 Wn.2d 1025 (2020).

existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."[29]

"The court must make a finding that either the claim is <u>not</u> grounded in fact or law and the attorney or party failed to make a reasonable inquiry into the law or facts, <u>or</u> the paper was filed for an improper purpose."[30]

Here, in both the trial court's oral decision and its written findings of fact, the trial court stated that in filing the amended counterclaim on August 28, 2018, Chang "failed to make [a] reasonable inquiry into [Sanchez's] claims."[31]  In rendering its decision, the trial court emphasized that Chang "had no discovery in the underlying litigation, had not been present or reviewed any of the depositions[,] had not yet reviewed the police report[, and] was unfamiliar with the immunity provisions" under RCW 4.24[.510].[32]  Additionally, the trial court found that even after Chang became aware of section .510, he continued to pursue counterclaims without "any evidence."[33]  And "he was also made aware and given notice of the possibility of CR 11 sanctions."[34]  Because the trial court's "findings" specified which filing violated CR 11, the court did not abuse its discretion by imposing CR 11 sanctions.

---

[29] <u>Biggs</u>, 124 Wn.2d at 196 (alterations in original) (quoting CR 11).

[30] <u>Id.</u> at 201 (citing CR 11).

[31] RP (Sept. 16, 2019) at 84.

[32] <u>Id.</u>

[33] <u>Id.</u> at 84-85.

[34] <u>Id.</u> at 85.

Additionally, Sanchez contends that because KMP sought available remedies against Sanchez and Chang, KMP created a per se conflict of interest that required the court to allow Chang to withdraw from the case.

"If attorney and client disagree about who is at fault and point their fingers at each other in response to a request for sanctions, the interests of the two are clearly adverse."[35] But there was no conflict between Sanchez and Chang.

Both sides refer to In re Marriage of Wixom, where a contested divorce and child custody dispute resulted in the trial court entering sanctions against the father and his counsel.[36] The father and his counsel were deemed jointly liable for the sanctions.[37] On appeal, the father's counsel argued that the father should be solely responsible for the sanctions.[38] As a result, the court required the father's counsel to withdraw.[39] It held that "if and when an attorney seeks to limit a sanction award against only his or her client, the attorney must withdraw from representing the client."[40]

Unlike the father's counsel in Wixom, Chang did not argue that Sanchez was responsible for the CR 11 sanctions, and thus no per se conflict of interest resulted. Because Chang's interests were not adverse to Sanchez's, the court did

---

[35] In re Marriage of Wixom & Wixom, 182 Wn. App. 881, 899, 332 P.3d 1063 (2014).

[36] 182 Wn. App. 881, 885, 332 P.3d 1063 (2014).

[37] Id.

[38] Id. at 897.

[39] Id. at 908-09.

[40] Id. at 899.

not abuse its discretion in denying Chang's motion for continuance and leave to withdraw.[41]

III. Attorney fees

KMP requests attorney fees on appeal. As the prevailing party, KMP is entitled to reasonable attorney fees under RCW 4.24.510 for successfully defending her immunity on Sanchez's defamation claim, subject to her compliance with RAP 18.1(d).

Therefore, we affirm.

_____

WE CONCUR:

_____  _____

---

[41] Sanchez also contends that his due process rights were violated because the trial court denied his motion for continuance and withdrawal of counsel and he was not permitted to appear at the September 16, 2019 sanctions hearing. But at the summary judgment hearing on June 21, 2019, Chang requested oral argument before sanctions were imposed. And at the sanctions hearing on September 16, 2019, Chang argued against the trial court's imposition of sanctions against Sanchez. And there is no evidence in the record supporting Sanchez's contention that he was prevented from being present at the September 16, 2019 hearing. Therefore, Sanchez's due process rights were not violated.