CIKLIN, J.
Francesca Cenatis appeals the judgment and sentence following her conviction for use of an antishoplifting device countermeasure. Cenatis argues that the statute does not encompass a shopping bag lined with layers of aluminum foil. We find that such an implement falls within the meaning of the statute, and accordingly affirm.
Facts
The state charged Cenatis by information with one count of use of an antisho-plifting device countermeasure and one count of petit theft. The case proceeded to a jury trial.
Cenatis and another woman (“the code-fendant”) were walking inside a shopping mall. A loss prevention manager (“the manager”) saw that the codefendant was carrying a “really old” Victoria’s Secret bag that was thicker than normal and had very worn handles. The manager suspected that the bag was a “booster bag,” which the manager described at trial as a “bag that is lined with either aluminum foil or duct tape” designed to prevent antisho-plifting sensors from detecting store merchandise placed inside the bag. The manager contacted the mail’s security officers and followed Cenatis and the codefendant.
Cenatis and the codefendant walked into a clothing store. A store employee testified that the store placed electronic security tags on its merchandise which caused sensors near the store’s doors to produce an audible alarm if the tags passed by the sensors. The store employee approached Cenatis and the codefendant and saw that they were passing the booster bag back and forth. The manager saw Cenatis and the codefendant grab several pairs of jean shorts and place them inside the bag. Cenatis and the codefendant did not pay for the merchandise and exited the store with the merchandise inside the bag. The store’s door alarms did not sound.
After Cenatis and the codefendant exited the store, the manager and mall security officers stopped the women, detained them, and contacted the police. The store employee viewed the merchandise and verified that it was from the clothing store.
At trial, a police officer described the booster bag as several identical Victoria’s Secret bags stacked within each other, with several sheets of aluminum foil layered within the bag. The bag was held together with adhesive. On first inspec *43 tion, the bag appeared to be an ordinary shopping bag and the aluminum foil was not 'visible from the outside. The bag was much heavier than an ordinary shopping bag. The state introduced the bag into evidence at trial.
At the conclusion of the state’s case and again at the conclusion of the defense case, Cenatis moved for judgment of acquittal on the grounds that a shopping bag layered with aluminum foil was not an antish-oplifting device countermeasure within the meaning of the statute. The trial court denied Cenatis’s motions.
At the conclusion of trial, the jury returned a verdict finding Cenatis guilty of using an antishoplifting device countermeasure and petit theft. The court adjudicated Cenatis guilty on both counts and sentenced her accordingly. Cenatis timely appeals her judgment and sentence.
Analysis
“The standard of review for the denial of a motion for judgment of acquittal is de novo.” Ortiz v. State, 36 So.3d 901, 902 (Fla. 4th DCA 2010) (citation omitted). Similarly, “[questions of statutory interpretation are subject to de novo review.” Allen v. State, 82 So.3d 118, 120 (Fla. 4th DCA 2012) (citation and quotation marks omitted).
Possession or use of an antishoplifting device countermeasure is prohibited by section 812.015(7), Florida Statutes (2010):
It is unlawful to possess, or use or attempt to use, any antishoplifting or inventory control device countermeasure within any premises used for the retail purchase or sale of any merchandise. Any person who possesses any antisho-plifting or inventory control device countermeasure within any premises used for the retail purchase or sale of any merchandise commits a felony of the third degree.... Any person who uses or attempts to use any antishoplifting or inventory control device countermeasure within any premises used for the retail purchase or sale of any merchandise commits a felony of the third degree ....
The same statute defines antishoplifting device and antishoplifting device countermeasure:
(h) “Antishoplifting or inventory control device” means a mechanism or other device designed and operated for the purpose of detecting the removal from a mercantile establishment or similar enclosure, or from a protected area within such an enclosure, of specially marked or tagged merchandise. The term includes any electronic or digital imaging or any video recording or other film used for security purposes and the cash register tape or other record made of the register receipt.
(i) “Antishoplifting or inventory control device countermeasure” means any item or device which is designed, manufactured, modified, or altered to defeat any antishoplifting or inventory control device.
§ 812.015(l)(h), (i), Fla. Stat. (2010).
Cenatis relies on the only reported decision discussing the antishoplifting device countermeasure statute, State v. Blunt, 744 So.2d 1258 (Fla. 3d DCA 1999). In Blunt, two women “covered the store security sensors with tinfoil to evade detection when they attempted to walk past the sensors with the stolen merchandise hidden in a bag.” Id. at 1258. The state charged Blunt with violating section 812.015(7). Id. Blunt moved to dismiss the charge, and the trial court granted the motion to dismiss because:
Tinfoil, by itself, does not fall under the definition of an ‘antishoplifting or inventory control device countermeasure’ found in s. 812.015(l)(i) because tinfoil is *44 not an item or device which is designed, manufactured, modified, or altered. The tinfoil may have been used in such fashion. However, use is not part of the definition.
Id. at 1259.
The state appealed, and the Third District affirmed, opining that it “entirely agree[d]” with the trial court’s reasoning. Id. The Third District noted that the trial court properly applied the plain language of the statute. Id. The court also noted that “[i]f there were any doubt (and we think there is none), ‘when the language is susceptible of differing constructions, it shall be construed most favorably to the accused.’ ” Id. (quoting § 775.021(1), Fla. Stat. (1997)).
In the instant case, the booster bag used by Cenatis fits the plain language of section 812.015(l)(i). An ordinary shopping bag fits the broad language of “any item” used in the statute. The plain language of the statute only requires one of the following: Design, manufacture, modification, or alteration to defeat an antishoplifting device. Here, an ordinary shopping bag was altered and modified by stacking several bags together, lining them with aluminum foil, and adding sufficient adhesive to keep the bags together. Trial testimony established that layering aluminum foil within the bag was capable of defeating an antish-oplifting device, specifically the antisho-plifting sensors at the doors of the store where Cenatis shoplifted. Further, the trial testimony established that Cenatis defeated the door sensors while removing merchandise from the store by using the bag.
The instant case is distinguishable from Blunt. In Blunt, the defendant simply used an ordinary item in an unusual way; the defendant did not manufacture, design, modify, or alter the tinfoil in any manner. In this case, however, ordinary items were combined in an unusual way to create a device capable of avoiding detection by the door sensors. The plain language of the statute encompasses the modified shopping bag used in this case.

Affirmed.

STEVENSON and TAYLOR, JJ., concur.