# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON, )
)   DIVISION ONE
          Respondent, )
)   No. 71238-1-I
          v. )
)   PUBLISHED OPINION
ZACHARY SCOTT LARSON, )
a.k.a. ZACH LARSON, )
)
          Appellant. )   FILED: February 17, 2015
_____ )

DWYER, J. — Zachary Larson attempted to steal a pair of shoes from a retail store. The shoes were equipped with a security device that was attached to the shoes by wire. Yet, Larson, using wire cutters that he had brought into the store, severed the wire and removed the security device. When Larson tried to leave the store, he was stopped by security employees and, subsequently, was charged with one count of retail theft with extenuating circumstances, which criminalizes the commission of retail theft while in possession of a "device designed to overcome security systems." Former RCW 9A.56.360(1)(b) (2013).[1] After a bench trial resulted in his conviction, he appealed, arguing that because wire cutters do not constitute a device designed to overcome security systems, the evidence was insufficient to support his conviction. Given our contrary

---

[1] RCW 9A.56.360 was amended, effective January 1, 2014, so as to replace every instance of the phrase "extenuating circumstances" with "special circumstances." LAWS of 2013, ch. 153, § 1. The statutory language at issue in this matter was not altered by the amendment and remains in effect.

conclusion that wire cutters do, in fact, constitute a device designed to overcome security systems, we deny Larson's request for appellate relief and, instead, affirm his conviction.

I

On May 17, 2013, Larson and his girlfriend, Meichielle Smith-Bearden, entered a Marshalls store in Bellingham. Larson used wire cutters to sever the wire that attached the security device to a pair of Nike shoes. By doing so, he was able to remove the security device from the shoes. When the couple attempted to leave the store without paying for the shoes, they were detained by security and the police were called. Larson admitted to a responding officer that he had intended to take the shoes without paying for them.

On May 23, Larson was charged by amended information with one count of retail theft with extenuating circumstances.

> (1) A person commits retail theft with extenuating circumstances if he or she commits theft of property from a mercantile establishment with one of the following extenuating circumstances:
> . . .
> (b) The person was, at the time of the theft, in possession of an item, article, implement, or device designed to overcome security systems including, but not limited to, lined bags or tag removers.

Former RCW 9A.56.360.

On November 8, Larson filed a Knapstad[2] motion, seeking dismissal of the charge. Therein, he argued that, as a matter of law, wire cutters do not constitute a "device designed to overcome security systems." Thus, he asserted,

---

[2] State v. Knapstad, 107 Wn.2d 346, 729 P.2d 48 (1986).

No. 71238-1-I/3

the facts alleged were legally insufficient to support a finding of guilt as to the charged crime.

On November 18, after a hearing, the trial court denied Larson's motion. Larson then stipulated to the admissibility and accuracy of the police reports, waived his right to a jury trial, and agreed that the trial court could decide his innocence or guilt based upon the police reports and argument of counsel.

On December 18, the trial court found Larson guilty as charged. He was sentenced to 60 days of confinement.

Larson appeals.

II

Larson's lone contention is that the State failed to adduce sufficient evidence to support his conviction. He maintains, as he did in his Knapstad motion, that wire cutters do not constitute a "device designed to overcome security systems," as required by former RCW 9A.56.360(1)(b). We disagree. The plain meaning of the statute reveals the legislature's intent to punish thieves who, anticipating that the possession of a device which may be able to foil a store's security system will be expedient to their cause, commit retail theft while in possession of such a device. In recognition of the fact that wire cutters are designed to cut wire, which is a common feature of security systems, we hold that, within the meaning of former RCW 9A.56.360(1)(b), wire cutters constitute a "device designed to overcome security systems."

It is the State's burden to prove beyond a reasonable doubt every essential element of a charged crime. In re Winship, 397 U.S. 358, 364, 90 S.

- 3 -

Ct. 1068, 25 L. Ed. 2d 368 (1970); State v. Vasquez, 178 Wn.2d 1, 6, 309 P.3d 318 (2013). "In a challenge to the sufficiency of the evidence, this court reviews the evidence in the light most favorable to the State." State v. Serano Salinas, 169 Wn. App. 210, 226, 279 P.3d 917 (2012), review denied, 176 Wn.2d 1002 (2013). A conviction will be reversed only in the event that no rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. State v. Engel, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009).

The meaning of a statute is a question of law subject to de novo review. State v. Ervin, 169 Wn.2d 815, 820, 239 P.3d 354 (2010). "The purpose of statutory interpretation is 'to determine and give effect to the intent of the legislature.'" State v. Evans, 177 Wn.2d 186, 192, 298 P.3d 724 (2013) (quoting State v. Sweany, 174 Wn.2d 909, 914, 281 P.3d 305 (2012)). Where a statute's meaning is plain on its face, we must give effect to that plain meaning as an expression of legislative intent. Ervin, 169 Wn.2d at 820. "The plain meaning of a statute may be discerned 'from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question.'" State v. J.P., 149 Wn.2d 444, 450, 69 P.3d 318 (2003) (quoting Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 11, 43 P.3d 4 (2002)). While we may, in seeking to perceive the plain meaning of a statute, examine "'the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole,'" we "'must not add words where the legislature has chosen not to include them,'" and "must 'construe statutes such that all of the language is given effect.'"

Lake v. Woodcreek Homeowners Ass'n, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010) (quoting Engel, 166 Wn.2d at 578; Rest. Dev., Inc. v. Cananwill, Inc., 150 Wn.2d 674, 682, 80 P.3d 598 (2003)). "If, after this inquiry, the statute is susceptible to more than one reasonable interpretation, it is ambiguous and we 'may resort to statutory construction, legislative history, and relevant case law for assistance in discerning legislative intent.'" Ervin, 169 Wn.2d at 820 (quoting Christensen v. Ellsworth, 162 Wn.2d 365, 373, 173 P.3d 228 (2007)).

A person commits retail theft with extenuating circumstances if, at the time of the theft, that person was in possession of a device designed to overcome security systems.

> (1) A person commits retail theft with extenuating circumstances if he or she commits theft of property from a mercantile establishment with one of the following extenuating circumstances:
>
> . . .
>
> (b) The person was, at the time of the theft, in possession of an item, article, implement, or device designed to overcome security systems including, but not limited to, lined bags or tag removers.

Former RCW 9A.56.360(1)(b).

On appeal, Larson contends that the legislature, by using the phrase "device designed to overcome security systems," signaled an intent to criminalize the commission of retail theft while in possession of devices "conceived and manufactured for the purpose of overriding security systems." Opening Br. of Appellant at 5. Larson maintains that wire cutters are not conceived and manufactured for the purpose of overriding security systems and, thus, are not designed to overcome security systems. According to Larson, wire cutters are

designed to cut wire: an act that is not confined to the overcoming of security systems.

We agree that wire cutters are designed to cut wire, just as we perceive that tag removers (one of the two illustrative example set forth in the statute) are designed to remove tags—both are designed to perform the physical act suggested by their descriptors. However, in considering this issue, we are careful to distinguish between an act and its outcome. While the question of whether a device is designed to perform a physical act is relevant to our inquiry, it is not itself the decisive issue. The decisive issue is whether the act which the device was designed to perform is meant to effect an *outcome*—namely, a security system being overcome.

In order to determine whether a device is designed as such, it is necessary to consider not only the device itself, but also the object upon which the device, often in the hands of an individual, acts.[3] More to the point, it must be determined whether the object meant to be neutralized, disabled, or otherwise thwarted by the device is actually used in security systems. For instance, in order to determine whether the use of a tag remover is designed to overcome a security system, it is necessary to consider whether tags are used in security systems.

---

[3] Our analysis does not depend upon the actual use of a device (or lack thereof) in each case. Rather, our consideration of usage on an abstract level is premised on the notion that the relationship between the device and the object upon which it acts will often suggest a design of or purpose for that device. Thus, while it is true that, in this case, Larson used wire cutters to cut the wire and thereby overcome the store's security system, our conclusion would be the same if it had been found only that he was in possession of wire cutters while committing retail theft.

The facts of this case, as well as experience, confirms that wire is used in security systems. Thus, the unremarkable observation that wire cutters are designed to cut wire, when considered together with the fact that wire is used in security systems, indicates that wire cutters are indeed designed to overcome security systems. While, in addition to overcoming security systems, wire cutters may be designed to achieve other results, the statutory provision at issue here does not restrict the devices within its ambit to those whose sole purpose is to overcome security systems.

We are aware that the foregoing analysis is at odds with a recent Division Two decision. See State v. Reeves, __ Wn. App. __, 336 P.3d 105 (2014) (holding that "ordinary pliers" do not constitute a device designed to overcome security systems). We are not persuaded by that decision's reasoning.

The Reeves court distinguished between "ordinary tools" and "tools specifically made to facilitate theft." In the former category, the court placed "ordinary pliers" and other tools "which have many purposes independent of retail theft." Reeves, 336 P.3d at 108-09. In the latter category, the court placed "lined bags and tag removers" and other "devices that have a primary purpose of facilitating retail theft." Reeves, 336 P.3d at 108.

We do not agree that the devices with which the legislature was concerned were those whose primary purpose is to facilitate retail theft. While we do not have reason to doubt that the legislature acted in response to the evils presented by retail theft, the language that was used in the statute targeted possession of devices "designed to overcome security systems"—not "devices

that have a primary purpose of facilitating retail theft." By straying from the statutory text, the <u>Reeves</u> court formulated a test that actually excludes one of the examples—tag removers—set forth in the statute by the legislature to illustrate the types of devices it intended to cover. Indeed, as Larson's counsel acknowledged at oral argument, the primary purpose of tag removers is not to be used by thieves to facilitate retail theft but, rather, to be used by retailers to disable security systems following an exchange of currency for goods.

Furthermore, as observed, the legislature did not limit the statute's reach to those devices designed "only" or even "primarily" for the purpose of overcoming security systems. In the absence of restrictive language to that effect, we do not presume that the legislature intended to exclude certain devices that are designed not only to overcome security systems, but to accomplish other objectives as well. Therefore, even assuming that wire cutters are designed to achieve more than one result, we decline to hold that they are, by virtue of their diverse utility, removed from the statute's coverage.

The provision at issue suggests that the legislature intended to target thieves who foresee the need for a device which may be able to overcome security systems. By providing illustrative rather than enumerative examples, the legislature signaled its intent to reach devices beyond those set forth in the statute. To exclude wire cutters from the statute's reach on the basis that wire cutters may be used in other settings to achieve different ends would frustrate the legislature's intent, while providing those inclined to commit retail theft with an unmistakable incentive to employ "ordinary devices," as characterized by the

Reeves court, to pursue their nefarious ends.  Surely, the legislature did not intend such a result.  We hold, therefore, that the legislature intended to include wire cutters within those devices "designed to overcome security systems." Accordingly, sufficient evidence was presented at trial to support the trial court's judgment of guilt.

Affirmed.

We concur:

_____

Becker, J. -

No. 71238-1-I, <u>State v. Zachary Scott Larson</u>

TRICKEY, J. (dissenting) — I respectfully dissent. The phrase "device designed to overcome security systems including, but not limited to, lined bags or tag removers" is ambiguous. Former RCW 9A.56.360(1)(b) (2013). The phrase is susceptible of differing reasonable interpretations, one of which is that the device must be "specifically constructed to overcome a security system." <u>State v. Reeves</u>, __ Wn. App. ___, 336 P.3d 105, 108 (2014). Since the statute here creates a criminal offense, we must apply the rule of lenity and "strictly construe" the statute in favor of the accused. <u>Reeves</u>, 336 P.3d at 109. Wire cutters are built to perform many tasks other than retail theft. The trial court should have granted the motion to dismiss.

Trickey, J