

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE DEC 2 4 2015
~Fairhurst, J.~
for CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on Dec. 24, 2015

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 91457-5 |
| | ) | |
| Respondent, | ) | |
| | ) | En Banc |
| v. | ) | |
| | ) | |
| ZACHARY SCOTT LARSON, a/k/a/ | ) | |
| ZACH LARSON, | ) | Filed    DEC 2 4 2015 |
| | ) | |
| Petitioner. | ) | |
| | ) | |

YU, J.—Are ordinary wire cutters "*designed* to overcome security systems"
within the context of retail theft? To answer this question, we must interpret the
statutory language of RCW 9A.56.360(1)(b), which elevates retail theft to a more
serious offense when the defendant is in possession of "an item, article, implement,
or device designed to overcome security systems."

We hold that the plain language of RCW 9A.56.360(1)(b) establishes the
legislature's intent to target organized retail theft only where particular types of
tools are utilized. An item, article, implement, or device is "designed to overcome

security systems" if it is created—whether by the manufacturer or the defendant—with the specific purpose of disabling or evading security systems. Because we hold that ordinary, unmodified wire cutters do not fall within this definition, the evidence is insufficient to support petitioner Zachary Larson's conviction for retail theft with extenuating circumstances. We reverse the Court of Appeals.

BACKGROUND

Under RCW 9A.56.360(1)(b),[1] a person commits retail theft with extenuating circumstances when he or she "was, at the time of the theft, in possession of an item, article, implement, or device designed to overcome security systems including, but not limited to, lined bags or tag removers." Petitioner Zachary Larson was convicted under the statute for committing retail theft while in possession of wire cutters. He used the wire cutters to remove a security tag from a pair of Nike shoes worth $32 at a Marshalls store in Bellingham. The State elected to charge Larson under this statutory provision rather than the ordinary theft statute.[2] Larson contends, as a matter of law, that wire cutters do not

---

[1] RCW 9A.56.360 was amended, effective January 1, 2014, to replace all instances of "extenuating circumstances" with "special circumstances." LAWS OF 2013, ch. 153, §§ 1, 3. This change was to account for the fact that the word "extenuating" actually refers to factors that mitigate rather than aggravate. *See* S.B. REP. ON SUBSTITUTE S.B. 5022, at 2, 63d Leg., Reg. Sess. (Wash. 2013). The amendment did not affect the elements of the offense or alter the language at issue in this matter. We use "extenuating circumstances" since this is the language that Larson was charged and convicted under, but citations are to the current statute.

[2] Had Larson been charged under the general theft statute, his crime would have amounted to third degree theft, a gross misdemeanor. RCW 9A.56.050. Third degree retail theft with extenuating circumstances is a class C felony. RCW 9A.56.360(4). Gross misdemeanors

constitute a device "designed to overcome security systems" as required by the statute and, therefore, the evidence is insufficient to support his conviction for retail theft with extenuating circumstances.

The Court of Appeals has addressed the question of what the legislature intended by "designed to overcome security systems" in two conflicting opinions. In the case below, Division One affirmed Larson's conviction in a split decision. *State v. Larson*, 185 Wn. App. 903, 344 P.3d 244 (2015).[3] Interpreting "designed" to include the item itself as well as the objective to which the item is put to use, Division One reasoned that because wire cutters are designed to cut wire and wires are used in security systems, wire cutters fall within the scope of RCW 9A.56.360(1)(b). Under Division One's sweeping logic, the statute encompasses any item that can be used to overcome a security system.

Division One explicitly rejected Larson's argument that the statute is limited to devices created with the specific purpose of overcoming security systems, and recognized that its decision was in direct conflict with a decision by Division Two. *Id.* at 910-11. In *State v. Reeves*, 184 Wn. App. 154, 157, 336 P.3d 105 (2014), Division Two held that "ordinary pliers" did not fall within the RCW

---

are punishable by up to 364 days in jail, while class C felonies are punishable by up to 5 years in prison. RCW 9A.20.021(2), (1)(c). Larson was sentenced to 60 days in jail. Clerk's Papers at 58.

[3] The dissent would have held that RCW 9A.56.360(1)(b) was ambiguous and the rule of lenity required that the statute be construed in Larson's favor. *Larson*, 185 Wn. App. at 912 (Trickey, J., dissenting).

3

9A.56.360(1)(b). Although Division Two ultimately relied on the rule of lenity to construe the statute in Reeves' favor, the court found that principles of statutory construction and the legislative history supported interpreting the statute "as applying only to devices made specifically for the purpose of overcoming security systems and not to ordinary devices a defendant intends to use to facilitate retail theft." *Id.* at 162.

We accepted review to resolve this conflict within the Court of Appeals between Division One and Division Two as to the meaning and scope of the phrase "designed to overcome security systems."

ANALYSIS

A. Interpreting the Scope of RCW 9A.56.360(1)(b)

Whenever we are tasked with interpreting the meaning and scope of a statute, "our fundamental objective is to determine and give effect to the intent of the legislature." *State v. Sweany*, 174 Wn.2d 909, 914, 281 P.3d 305 (2012) (citing *State v. Budik*, 173 Wn.2d 727, 733, 272 P.3d 816 (2012)). We look first to the plain language of the statute as "[t]he surest indication of legislative intent." *State v. Ervin*, 169 Wn.2d 815, 820, 239 P.3d 354 (2010). "'[I]f the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent.'" *State v. Hirschfelder*, 170 Wn.2d 536, 543, 242 P.3d 876 (2010) (quoting *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146

Wn.2d 1, 9-10, 43 P.3d 4 (2002)). We may determine a statute's plain language by looking to "the text of the statutory provision in question, as well as 'the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole.'" *Ervin*, 169 Wn.2d at 820 (quoting *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005)).

RCW 9A.56.360 elevates retail theft to a more serious offense under certain circumstances:

> (1) A person commits retail theft with extenuating circumstances if he or she commits theft of property from a mercantile establishment with one of the following extenuating circumstances:
>
> . . . .
>
> (b) The person was, at the time of the theft, in possession of an item, article, implement, or *device designed to overcome security systems* including, but not limited to, lined bags or tag removers.

RCW 9A.56.360 (emphasis added). "Designed to overcome security systems" is not defined in the statute, but a plain language analysis leads us to conclude that the legislature did not intend to include ordinary wire cutters within the scope of RCW 9A.56.360(1)(b).

We look first to the surrounding statutory language to determine the legislature's intended meaning and scope. *See Burns v. City of Seattle*, 161 Wn.2d 129, 148, 164 P.3d 475 (2007) ("a doubtful term or phrase in a statute or ordinance takes its meaning from associated words and phrases" (describing the principle of

noscitur a sociis) (citing *State v. Rice*, 120 Wn.2d 549, 560-61, 844 P.2d 416 (1993))). Specifically, we turn to the illustrative examples of lined bags and tag removers to determine what the legislature intended by "designed to overcome security systems."

The State correctly observes that the statute, by its own terms, is not limited to the examples provided by the legislature. The statutory language "including, but not limited to" plainly establishes lined bags and tag removers as illustrative examples rather than an exhaustive list. *Cf. In re Postsentence Review of Leach*, 161 Wn.2d 180, 186, 163 P.3d 782 (2007) (lack of a provision for "similar" or "like" offenses indicated that "the legislature plainly meant for these enumerated crimes to be the exclusive and complete list"). However, contrary to the State's assertions, the plain language of RCW 9A.56.360(1)(b) indicates that the illustrative examples were intended to *limit* the scope of the statute. We apply the principle of statutory interpretation that "general terms, when used in conjunction with specific terms in a statute, should be deemed only to incorporate those things similar in nature or 'comparable to' the specific terms." *Simpson Inv. Co. v. Dep't of Revenue*, 141 Wn.2d 139, 151, 3 P.3d 741 (2000) (quoting *John H. Sellen Constr. Co. v. Dep't of Revenue*, 87 Wn.2d 878, 883-84, 558 P.2d 1342 (1976)); *see also State v. Gonzales Flores*, 164 Wn.2d 1, 13, 186 P.3d 1038 (2008) ("specific words modify and restrict the meaning of general words when they

occur in a sequence" (describing the principle of ejusdem generis) (citing *State v. Roadhs*, 71 Wn.2d 705, 708, 430 P.2d 586 (1967))). Extrapolating from the two illustrative examples of lined bags and tag removers, we can determine that the legislature intended to limit the scope of RCW 9A.56.360(1)(b) to similar items.

The statute does not define lined bags or tag removers, but a commonsense examination of these examples provides insight into the statute's intended meaning and scope. Lined bags are an example of an article created by a thief for the specific purpose of committing retail theft. Also known as "booster bags," these are typically bags lined with layers of tinfoil. *See Cenatis v. State*, 120 So. 3d 41, 42 (Fla. Dist. Ct. App. 2013). A lined bag overcomes a security system by preventing detection of the security device by security scanners when the thief exits the store. *Id.* As its name states, the sole purpose of a tag remover is to remove security tags from merchandise. The intended, lawful purpose is for retail employees to remove tags from merchandise after the customer has purchased it. But in the hands of a thief, the tag removers become a highly effective tool for overcoming a store's security system. Lined bags and tag removers are highly specialized tools with little to no utility outside of the commission of retail theft. From this fact, it can be reasonably inferred that there is no reason a person would be in possession of these items except to facilitate retail theft.

We disagree with the State's contention that the legislature intended to capture a significantly broader class of items beyond the examples expressly provided in the statute. The State's overly broad interpretation is inconsistent with the well-established principle that statutes must be interpreted "'so that all the language used is given effect, with no portion rendered meaningless or superfluous.'" *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003) (internal quotation marks omitted) (quoting *Davis v. Dep't of Licensing*, 137 Wn.2d 957, 963, 977 P.2d 554 (1999)). If the statute were to encompass *any* device that could be used to overcome a security system, as the State contends, the examples enumerated by the legislature would be superfluous and provide no additional guidance on the application of the statute. In order to give meaning and effect to the examples the legislature chose to provide, we must interpret them as instructive examples that demonstrate the type and character of items that are included within the scope of the statute. Thus, we can reasonably infer that the examples were intended to limit the scope to similar items, rather than expand the scope to any item that could conceivably be used to overcome security systems.

Furthermore, we must interpret statutes to avoid absurd results. *State v. Alvarado*, 164 Wn.2d 556, 562, 192 P.3d 345 (2008) (citing *Tingey v. Haisch*, 159 Wn.2d 652, 664, 152 P.3d 1020 (2007)). Under the State's interpretation, virtually any shoplifting offense could fall within the scope of RCW

9A.56.360(1)(b). For example, where a person slips a stolen item into his pocket to hide it from a store's security camera, the pocket has arguably become a "device designed to overcome security systems." Similarly, a person who happens to have in her pocket a pair of nail clippers, a Leatherman multitool, or any other tool that people commonly carry with them, at the time she shoplifts would be guilty of retail theft with extenuating circumstances. As these practical examples demonstrate, the State's overinclusive approach belies the statute's primary purpose of capturing retail theft that occurs under certain aggravating circumstances.

We also cannot agree with the State's assertion that the statute was intended to include items "that *can be used* to steal in a variety of retail theft settings." Resp't's Suppl. Br. at 10 (emphasis added). By treating "designed" as synonymous with "used," the State's interpretation reads words into the statute that simply are not there. It is beyond our power and function to "'add words or clauses to an unambiguous statute when the legislature has chosen not to include that language.'" *J.P.*, 149 Wn.2d at 450 (quoting *State v. Delgado*, 148 Wn.2d 723, 727, 63 P.3d 792 (2003)). The statute plainly criminalizes *possession* of certain tools, not actual or intended use. If the legislature had intended to include use within the scope of the statute, it could have done so by including the word "used"—as it did with other criminal statutes dealing with tools, discussed below.

The State's approach is similarly incorrect to the extent that it interprets "designed" to include an intent element. *See* Resp't's Suppl. Br. at 10. Had the legislature wanted to go beyond mere possession and criminalize intent to use a device to overcome a security system, it could have included specific language to that end. As an example, we point to RCW 9A.52.060, also discussed further below, in which the legislature clearly criminalized possession of burglar tools "under circumstances evincing an *intent to use*" and "knowing that the same is *intended to be so used*." RCW 9A.52.060(1) (emphasis added).

The legislature's intent to limit the scope of 9A.56.360(1)(b) is further supported by looking to other provisions within Title 9A RCW that deal similarly with the possession of tools during the commission a crime. Unlike RCW 9A.56.360(1)(b), these statutes explicitly extend beyond an item's design and mere possession. Under RCW 9A.52.060(2), making or having burglar tools is a gross misdemeanor. Burglar tools include any "implement adapted, designed, or commonly used" to commit burglary. RCW 9A.52.060(1). Identical language was adopted to define motor vehicle theft tools. RCW 9A.56.063(1). Similarly, a "deadly weapon" under RCW 9A.04.110 includes "*any* other weapon, device, instrument, article, or substance, . . . which, under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or substantial bodily harm." RCW 9A.04.110(6) (emphasis added).

In all these instances, the legislature utilized appropriately broad language to capture *any* device that could be conceivably used to commit burglary or vehicle theft, or cause death or substantial bodily harm. By comparison, RCW 9A.56.360(1)(b)'s language is decidedly narrower in scope. These statutes demonstrate that the legislature knows how to craft a broad statute when it wants to do so. *See Gonzales Flores*, 164 Wn.2d at 13. If the legislature had intended RCW 9A.56.360(1)(b) to have a broad application, it could have used appropriately broad language, as it did in other similar statutes.

For the reasons discussed above, we hold that an item, article, implement, or device is "designed to overcome security systems" within the scope of RCW 9A.56.360(1)(b) if it was created—whether by a manufacturer or a defendant—with the specialized purpose of overcoming security systems, lawfully or otherwise. However, we emphasize that we are preserving the illustrative and nonexclusive nature of the examples of lined bags and tag removers. Without question, someone will (and probably already has) come up with other specialized devices to efficiently evade security systems and facilitate retail theft.[4] While

---

[4] Division One cautioned that excluding ordinary tools, such as wire cutters or pliers, would "provid[e] those inclined to commit retail theft with an unmistakable incentive to employ 'ordinary devices,' as characterized by the *Reeves* court, to pursue their nefarious ends." *Larson*, 185 Wn. App. at 912 (citing *Reeves*, 184 Wn. App. 154). While this may be a possible consequence of our ruling here, it is not within our power to rewrite the legislature's carefully chosen words.

commonly used tools with a general purpose, like wire cutters or pliers, do not fit within the narrow scope of RCW 9A.56.360(1)(b), perhaps an ordinary tool that has been specifically modified for use in retail theft might constitute a device "designed to overcome security systems." *See Cenatis*, 120 So. 3d at 44.[5]

Because we find the statute to be plain and unambiguous on its face, our analysis stops here. *State v. Wilson*, 125 Wn.2d 212, 217, 883 P.2d 320 1994) ("Plain language does not require construction." (citing *State v. Thornton*, 119 Wn.2d 578, 580, 835 P.2d 216 (1992))). We do not resort to interpretive tools such as legislative history but nevertheless note that the legislative history supports our plain reading. Retail associations and individual retailers gave repeated testimony indicating that they were not concerned with ordinary, petty shoplifting but, rather, sophisticated retail theft rings working with fencing organizations to resell stolen merchandise. *See, e.g.*, Hr'g on H.B. 2704 Before the H. Criminal

---

[5] Florida's retail theft statute makes it "unlawful to possess, or use or attempt to use, any antishoplifting or inventory control device countermeasure." FLA. STAT. § 812.015(7). An "antishoplifting or inventory control device countermeasure" is defined as "any item or device which is designed, manufactured, modified, or altered to defeat any antishoplifting or inventory control device." FLA. STAT. § 812.015(1)(i).

In *State v. Blunt*, 744 So. 2d 1258 (Fla. Dist. Ct. App. 1999), the defendant's use of tinfoil to cover security tags did not fall within the statute. But in *Cenatis*, use of a "booster bag" was found to qualify as an "antishoplifting or inventory control device countermeasure." *Cenatis*, 120 So. 3d at 43-44. Distinguishing *Blunt*, the court in *Cenatis* stated that the defendant had "used an ordinary item in an unusual way; the defendant did not manufacture, design, modify, or alter the tinfoil in any manner. In this case, however, ordinary items were combined in an unusual way to create a device capable of avoiding detection by the door sensors." *Id.*

12

Justice and Corr. Comm., 59th Leg., Reg. Sess. (Jan. 27, 2006), at 19 min., 28 sec., *audio recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org (testimony by a loss prevention supervisor regarding the need to specifically target organized theft rings rather than typical shoplifters); *see also* Hr'g on Substitute S.B. 5022 Before the H. Pub. Safety Comm., 63d Leg., Reg. Sess. (Mar. 5, 2013), at 44 min., 50 sec., *audio recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org (testimony on behalf of the Washington Retail Association, a prime sponsor of the original statute). The legislative history suggests that the statute was not intended to encompass crimes like the one committed by Larson.

## B. Sufficiency of the Evidence

The State bears the burden of proving every element of a crime beyond a reasonable doubt. *State v. Byrd*, 125 Wn.2d 707, 713-14, 887 P.2d 396 (1995) (citing *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970)). When a challenge to the sufficiency of the evidence to support a conviction is alleged, we review the evidence de novo in the light most favorable to the State. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). The conviction will be upheld if any rational trier of fact could have found the essential elements beyond a reasonable doubt. *State v. Engel*, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009) (citing *State v. Wentz*, 149 Wn.2d 342, 347, 68 P.3d 282 (2003)).

Larson asserts that because wire cutters do not fall within the scope of RCW 9A.56.360(1)(b), the evidence was insufficient to support his conviction for retail theft with extenuating circumstances under the statute. Because we find that the legislature did not intend to include wire cutters within the scope of RCW 9A.56.360(1)(b), we agree that the evidence is not sufficient to support his conviction. Consequently, we reverse the Court of Appeals.

CONCLUSION

A plain language analysis of RCW 9A.56.360(1)(b), which includes looking at both the internal context of the provision itself and the broader statutory scheme, indicates that the legislature intended the statute to have a narrow scope. We hold that "designed to overcome security systems" for the purposes of retail theft with extenuating circumstances under RCW 9A.56.360(1)(b) is limited to those items, articles, implements, or devices created—whether by the defendant or manufacturer—with the specialized purpose of overcoming security systems. Ordinary tools, such as pliers or the wire cutters used by Larson, do not fall within the scope of RCW 9A.56.360(1)(b). The evidence is insufficient to support Larson's conviction for third degree retail theft with extenuating circumstances, and we reverse the Court of Appeals.

_____
                                              Yu, J.

WE CONCUR:

_____         _____
Madsen, C.J.                                Stephens, J.

_____         _____
Johnson, J.                                 Wiggins, J.

_____         _____
Owens, J.                                   González, J.

_____         _____
Fairhurst, J.                               Gordon McCloud, J.