IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 78566-4-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| YORLANG, JEFFREY JASON, | ) | |
| DOB: 02/13/1988, | ) | |
| | ) | |
| Appellant. | ) | FILED: December 2, 2019 |

SCHINDLER, J. — Thirty-year-old Jeffrey Jason Yorlang pleaded guilty to domestic violence assault in the second degree while armed with a deadly weapon and residential burglary. The court imposed an exceptional sentence of credit for time served and the mandatory 12-month deadly weapon sentence under RCW 9.94A.533(4). Yorlang appeals the judgment and sentence. Yorlang contends the court erred in concluding that it did not have the discretion to impose an exceptional sentence downward for the mandatory deadly weapon enhancement. For the first time on appeal, Yorlang also contends the court should prohibit collection of the $500 victim penalty assessment from Social Security disability income. Because the plain language of RCW 9.94A.533(4) and case law establishes imposition of the 12-month deadly

weapon enhancement is mandatory and the uncontroverted record shows Yorlang was not receiving Social Security benefits, we affirm.

Domestic Violence Assault with a Deadly Weapon

Jeffrey Jason Yorlang is the son of James Yorlang. On October 11, 2017, an Everett Municipal Court judge entered a domestic violence no-contact order prohibiting Yorlang from contacting his father or coming within 500 feet of his residence.

On January 17, 2018, Everett Police Department officers responded to a 911 call from James'[1] residence. Yorlang fled before officers arrived. Yorlang's brother-in-law Richard Sussman was on the floor "with blood nearby to where he was laying." Richard[2] told the police that Yorlang stabbed him in the back. Medics transported Richard to Providence hospital. Witnesses told the police that Yorlang and his brother-in-law argued, Yorlang went into the kitchen, "grabbed" a steak knife, and stabbed Richard multiple times.

Medical records document "[t]hree stab wounds to the upper back and one knife wound to [Richard's] head." The medical records state the "injuries included . . . 6 cm and 4 cm lacerations that appeared to be deep" and "required a total of 30 staples." Richard also suffered "a contusion of the left lung" and "a fracture of one of his right ribs."

Richard told the police that Yorlang "has unclear" but undiagnosed "mental health concerns and issues." Richard said Yorlang "does not take prescription medications but in the past has cut items in the residence with a knife and made references to demons."

---

[1] We refer to James Yorlang by his first name for purposes of clarity.
[2] We refer to Richard Sussman and his wife Sharon Sussman by their first names for clarity.

The police arrested Yorlang the next day when he returned to his father's house. Yorlang "admitted to stabbing his brother-in-law multiple times," "he knew his father had a court order," and knew "he was not supposed to be in the house."

The State charged Yorlang with domestic violence assault in the second degree while armed with a deadly weapon in violation of RCW 9A.36.021(1)(a) and (c) and RCW 9.94A.533(4) and domestic violence residential burglary in violation of RCW 9A.52.025.

Plea Agreement

The State and Yorlang entered into a plea agreement on April 12, 2018. Yorlang agreed to plead guilty as charged. Yorlang agreed the court could consider the facts in the certificate of probable cause for purposes of sentencing.

With an offender score of 3, the standard sentence range for assault in the second degree is 13 to 17 months plus a mandatory 12-month deadly weapon enhancement. The standard sentence range for residential burglary is 15 to 20 months. The State agreed to recommend a concurrent 18-month sentence plus the 12-month deadly weapon enhancement. The plea agreement states the defense "may request exceptional downward sentence." Yorlang entered an Alford[3] plea on April 20.

Request for Exceptional Sentence

Before the June 4 sentencing hearing, defense counsel filed a sentencing memorandum arguing the court should impose an exceptional sentence below the standard range of 9 months with credit for time served. The defense attached the report of social worker Eric Johnsen to argue that at the time of the assault, Yorlang was

---

[3] North Carolina v. Alford, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

3

suffering from undiagnosed serious mental illness. The defense also claimed that "although legally imperfect," Yorlang was acting in self-defense and "protecting himself."

In his report, Johnsen states that he interviewed 30-year-old Yorlang and reviewed the "online posts" Yorlang made before his arrest. Johnsen said the online posts "revolve around alien or interplanetary themes and content" and "are almost always nonsensical and disorganized." Johnsen states Yorlang "became obsessed with supernatural phenomena like telepathy and conspiracy theories involving alien abductions."

Johnsen concluded Yorlang "appears to be suffering from undiagnosed schizophrenia with both paranoid and disorganized type symptoms." Johnsen states that although Yorlang "has been struggling with mental illness for quite some time," he "has never received psychiatric treatment in the community." Johnsen states Yorlang "is amenable to mental health treatment and was recently evaluated by the jail's prescriber for medications to treat his symptoms."

Sentencing Hearing

At the sentencing hearing on June 4, the prosecutor recommended the court sentence Yorlang to a concurrent sentence of 17 months for the assault and 18 months for the residential burglary to run consecutively to the 12-month deadly weapon enhancement.

The prosecutor agreed Yorlang suffered from "a mental health condition" that could have been asserted as "a colorable defense."

> I do agree with and understand the claim that although not rising to the level of a legal defense, there was a mental health condition which was potentially along the lines of a colorable defense to some of the elements of the crimes which were charged.

4

Ultimately, Your Honor, I agree that those are mitigating factors in this particular case and in this particular situation, and I look at these situations a little bit differently when it appears there is something that wasn't necessarily formally diagnosed in advance as opposed to a situation where a person has not been taking their prescribed medications.

The prosecutor asked the court to "make a finding that the defendant has a mental condition that contributed to this offense."

The prosecutor told the court that the victim Richard Sussman did not want the court to impose a "lengthy prison sentence":

Your Honor, I can tell the court that this case was an Alford plea. The State was satisfied with the plea, with the disagreed recommendation, in large part because when I met with Mr. Sussman from the very beginning he made it very clear that he never wanted any kind of lengthy prison sentence to be imposed on Mr. Yorlang. He felt there was a clear mental health dynamic that needed to be addressed, which was a clear contributing factor to the underlying situation.

The State felt that the deadly weapon enhancement was appropriate given the nature of the attack and the extent of the injuries to Mr. Sussman, which include multiple stab wounds including to the head and back area.

Yorlang's father James and his sister Sharon Sussman addressed the court and asked the court to impose an exceptional sentence. James said he let Yorlang come into the house despite the no-contact order. James told the court:

I am sorry I did that. I didn't think that he — I didn't think he would, you know, be as aggressive. And I did learn later on that he's having some trouble with hearing voices and I also know that he's been using drugs. I talked to him about it before. I really don't know. I'm not good, you know, in judging people.

So I just want to ask you, judge, what I want him to have is the proper help he needs and that he will — you know, that will help him with his mental problem. If possible, judge, Your Honor, if you could lessen his sentence.

5

Sharon told the court:

> I love my little brother. I don't — I told my husband I want both of them to take half the responsibility what happened that night. He shouldn't have to take full responsibility for everything. It wouldn't be fair.
>
> If you can consider my plead with you, Your Honor, I would really appreciate it. It would mean the world to our family. I know my husband wouldn't want Jeff to spend a long time in prison. That's not what he wants. My husband recognized his faults. He wants the best for Jeff and for Jeff to get the treatment.

The prosecutor stated that if the court decided to impose an exceptional sentence as requested by the defense, the court could impose "up to zero on the base range." The court noted, "I think I'm still bound by giving him 12 months on the weapon enhancement. I don't think I can reduce that." In response, the defense attorney told the court, "I forgot to address" imposition of the mandatory 12-month deadly weapon sentence. The defense attorney cited a recent case, State v. Houston-Sconiers, 188 Wn.2d 1, 391 P.3d 409 (2017), for the first time to argue that "judges do have discretion even when it comes to . . . enhancements."

The court quoted from the letter Richard wrote in ruling that it would grant the request for an exceptional downward sentence:

> [Richard] indicated in his statements that he's totally recovered from his injuries both physically and psychologically. And he said, "I do believe an extended jail sentence will not help [Yorlang] with these issues and may only make matters worse. I know he needs professional help with drug addiction and monitored/enforced psychiatric care to overcome these hurdles in his life." And then [Richard] said he just wanted to make sure that you got the help that you needed and you recovered. So this is not somebody who is advocating or indicating that you should go to prison for a significant period of time. In fact, he states to the contrary, that it's possible that it might make things worse.

But the court ruled, "I don't believe that [Houston-Sconiers] is authority which authorizes me to waive the 12-month enhancement." However, the court continued the sentencing

6

hearing to allow the parties to submit additional briefing to address the deadly weapon enhancement statute and Houston-Sconiers.

The prosecutor filed a supplemental memorandum arguing RCW 9.94A.533(4) mandates a 12-month consecutive sentence for committing a crime with a deadly weapon. The prosecutor states the Supreme Court decision in Houston-Sconiers held that under the Eight Amendment to the United States Constitution, the sentencing court has the discretion for juvenile offenders only to impose an exceptional sentence downward, including for a weapon enhancement. The prosecutor argued the court should impose "a sentence of, at the very least, 12 months for the deadly weapon enhancement, with the ability to impose 0 months on the underlying standard range sentence."

Defense counsel filed a supplemental sentencing memorandum arguing the court should find Yorlang's undiagnosed mental illness is a mitigating factor and reduce the length of the deadly weapon sentence enhancement. The defense argued the rationale of Houston-Sconiers should apply to individuals with "mental illness and the impairment of capacity to appreciate the wrongfulness of the conduct or conform conduct to the law."

The court found, "Reasonable grounds exist to believe the defendant is a mentally ill person as defined in RCW 71.24.025, and that this condition is likely to have influenced the offense." The court imposed an "exceptional sentence below the standard range" of 0 days for assault in the second degree and residential burglary "based on imperfect mental & self-defense claims." The court imposed a 12-month sentence of confinement for committing assault while armed with a deadly weapon

7

under RCW 9.94A.533(4). The judgment and sentence states, "The Court finds it has no discretion to impose less than the 12 months mandatory for the deadly weapon enhancement." The court imposed 18 months of community custody and ordered Yorlang to obtain a mental health evaluation. The court waived all discretionary legal financial obligations and imposed the mandatory $500 victim penalty assessment to be paid at the rate of $10 per month after Yorlang's release.

Mandatory Deadly Weapon Enhancement

Yorlang appeals imposition of the 12-month deadly weapon sentence. Yorlang contends the court erred in ruling it did not have the discretion to impose an exceptional sentence for the deadly weapon enhancement under RCW 9.94A.533(4).

The court's mistaken belief that an exceptional sentence is not authorized by statute is an abuse of discretion subject to reversal. State v. Grayson, 154 Wn.2d 333, 342, 111 P.3d 1183 (2005). But a court "cannot abuse discretion it does not have." In re Pers. Restraint of Light-Roth, 191 Wn.2d 328, 337, 422 P.3d 444 (2018). Here, neither the plain language of RCW 9.94A.533(4) nor case law supports Yorlang's argument that the court had the discretion to impose an exceptional sentence for the deadly weapon enhancement under RCW 9.94A.533(4).

Interpretation of a statute is a question of law we review de novo. State v. Gonzalez, 168 Wn.2d 256, 263, 226 P.3d 131 (2010). Our fundamental goal in statutory interpretation is to ascertain and carry out the intent of the legislature. State v. Larson, 184 Wn.2d 843, 848, 365 P.3d 740 (2015). In determining the plain meaning of a statute, we look at the context of the statute, related provisions, and the statutory scheme as a whole. State v. Jacobs, 154 Wn.2d 596, 600, 115 P.3d 281 (2005).

Statutes must be read together to harmonize and give effect to the statutory scheme and maintain the integrity of the respective statutes. State v. Jones, 172 Wn.2d 236, 243, 257 P.3d 616 (2011). If the plain meaning of the statute is unambiguous, our inquiry ends. Gonzalez, 168 Wn.2d at 263.

Under RCW 9.94A.535, a court may impose an exceptional sentence below the standard range if it finds mitigating circumstances are established by a preponderance of the evidence and substantial and compelling reasons justify an exceptional sentence. RCW 9.94A.535(1) lists illustrative reasons to "impose an exceptional sentence below the standard range," including a mental health condition that significantly impairs the defendant's "capacity to appreciate the wrongfulness of his or her conduct." RCW 9.94A.535(1)(e); State v. Jeannotte, 133 Wn.2d 847, 851-52, 947 P.2d 1192 (1997).

RCW 9.94A.533(4) governs imposition of a deadly weapon enhancement. RCW 9.94A.533(4) states that if the offender was armed with a deadly weapon "other than a firearm as defined in RCW 9.41.010" and the offender is being sentenced for a class B felony, the court shall add 12 months to the sentence. RCW 9.94A.533(4)(b). The plain and unambiguous language of RCW 9.94A.533(4)(e) states:

> Notwithstanding any other provision of law, all deadly weapon enhancements under this section are mandatory, shall be served in total confinement, and shall run consecutively to all other sentencing provisions, including other firearm or deadly weapon enhancements, for all offenses sentenced under this chapter.[4]

In State v. Brown, 139 Wn.2d 20, 29, 983 P.2d 608 (1999), overruled on other grounds by Houston-Sconiers, 188 Wn.2d at 1, the Washington Supreme Court held the "absolute language" of RCW 9.94A.310, recodified as RCW 9.94A.510 (LAWS OF 2001,

---

4 Emphasis added.

9

ch. 10, § 6), deprives a sentencing court of the discretion to impose an exceptional

sentence for a deadly weapon enhancement:

> RCW 9.94A.310(4)(e) clearly provides that an offender's sentence cannot be reduced below the times specified in RCW 9.94A.310(4)(b). If RCW 9.94A.310(4)(e) is to have any substance, it must mean that courts may not deviate from the term of confinement required by the deadly weapon enhancement.

The legislature has chosen not to amend this statutory language since Brown was

decided nearly 20 years ago. " '[T]his court presumes that the legislature is aware of

judicial interpretations of its enactments and takes its failure to amend a statute

following a judicial decision interpreting that statute to indicate legislative acquiescence

in that decision.' " State v. Otton, 185 Wn.2d 673, 685-86, 374 P.3d 1108 (2016)

(quoting City of Federal Way v. Koenig, 167 Wn.2d 341, 348, 217 P.3d 1172 (2009)).

The Washington Supreme Court in Houston-Sconiers did not modify the holding

of Brown with respect to adults. The court held the Eighth Amendment requires the

court to consider "mitigating circumstances associated with the youth of any juvenile

defendant." Houston-Sconiers, 188 Wn.2d at 21. The court held that "[t]o the extent

our state statutes have been interpreted to bar such discretion with regard to juveniles,

they are overruled." Houston-Sconiers, 188 Wn.2d at 21.[5]

Yorlang cites In re Personal Restraint of Mulholland, 161 Wn.2d 322, 166 P.3d

677 (2007), and State v. McFarland, 189 Wn.2d 47, 399 P.3d 1106 (2017), to argue the

court has the discretion to depart from a mandatory consecutive deadly weapon

enhancement despite the statutory language that mandates a consecutive sentence.

---

[5] Footnote omitted.

Mulholland and McFarland are distinguishable. Neither of these cases address RCW 9.94A.533(4).

In Mulholland, the Washington Supreme Court held that the plain language of RCW 9.94A.535 and RCW 9.94A.589 authorize a concurrent exceptional sentence to be imposed for multiple serious violent offenses when the court identifies substantial and compelling reasons to do so, even though RCW 9.94A.589(1)(b) states that sentences for such crimes must be consecutive. Mulholland, 161 Wn.2d at 329-30. Likewise, in McFarland, the Washington Supreme Court held that RCW 9.9A.535 and RCW 9.94A.589(1)(c) permit the sentencing court to impose exceptional concurrent sentences for firearms-related convictions. McFarland, 189 Wn.2d at 54-55. Nothing in Mulholland nor McFarland overrules or undermines RCW 9.94A.533(4) or Brown. The sentencing court did not err in concluding it did not have the discretion under RCW 9.94A.533(4) to impose an exceptional sentence for the mandatory 12-month deadly weapon enhancement in this case.

Social Security Benefits

The court waived all nonmandatory legal and financial obligations and imposed only the mandatory $500 victim penalty assessment (VPA) fee under RCW 7.68.035. At the sentencing hearing, defense counsel agreed Yorlang could pay $10 a month.

For the first time on appeal, Yorlang contends the court erred by not stating in the judgment and sentence that the $500 VPA cannot be collected from Social Security disability benefits. Under RAP 2.5(a), because Yorlang must object to the finding that he had the ability to pay $10 per month to preserve a claim of error, we decline to review this issue raised for the first time on appeal.

11

In any event, nothing in the record shows Yorlang was receiving Social Security benefits. In <u>State v. Catling</u>, 193 Wn.2d 252, 264, 260, 438 3d 1174 (2019), the court held imposition of the mandatory VPA does not violate the anti-attachment provision of the Social Security Act, 42 U.S.C. § 407(a), but "this provision" prohibits using those benefits in a collection action. Here, unlike in <u>Catling</u> and as noted, the record does not show Yorlang was receiving Social Security benefits. Further, nothing in the record indicates the State has taken any steps to enforce collection of the VPA fee. <u>See</u> <u>State v. Smits</u>, 152 Wn. App. 514, 524-25, 216 P.3d 1097 (2009) (a party does not have the right to appeal a legal financial obligation imposed as part of a judgment and sentence where the claim is speculative and the State has not sought to enforce the payment).

We affirm the judgment and sentence.

_Schindler, J_

WE CONCUR:

_Chun, J._    _Mann, ACJ_