2012 COA 62

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Jayson Michael OSLUND, Defendant–Appellant.**

**No. 10CA2049.**

Colorado Court of Appeals, Div. V.

April 12, 2012.

John W. Suthers, Attorney General, Emmy A. Langley, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Nora V. Kelly, P.C., Nora V. Kelly, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge CARPARELLI.

¶ 1 Defendant, Jayson Michael Oslund, appeals the judgment of conviction entered

upon jury verdicts finding him guilty of reckless manslaughter, first degree felony murder, and aggravated robbery. We affirm.

## I. Background

¶ 2 On September 4, 2009, defendant, his brother, and five others, including Matthew Maez, spent the evening drinking and socializing. After becoming severely intoxicated, Maez left the house to ride home with a friend. His friend went back into the house and returned with one of the hosts shortly thereafter. They did not see Maez, and so they talked and waited for him near the friend's car.

¶ 3 The host heard noises coming from defendant's car and investigated. As the host reached the car, Maez jumped out, knocked her down, dropped a stereo faceplate and other items from the car, and ran away. The host, who was not able to see that it was Maez, screamed, and defendant and his brother ran out of the house. She told them what had happened and the direction in which the man had fled. The two men then set out to find and catch him.

¶ 4 Ten to fifteen minutes later, defendant and his brother returned. Defendant announced that it was Maez who had broken into his car and that he had punched Maez when Maez refused to return defendant's property. Defendant had blood on his hand and was carrying a stick. Defendant's brother returned with property he took from Maez, including items from defendant's car. The prosecution also introduced evidence that defendant's brother took Maez's wallet and watch as well.

¶ 5 Meanwhile, Maez's friend contacted other friends and they searched for him. Finding him, they took him to the emergency room. The emergency room doctor diagnosed Maez with blunt force trauma to his head and eventually confirmed he was bleeding into his brain. Maez later died from his injuries.

¶ 6 Authorities found and arrested defendant in Nebraska about a month later. Defendant was charged with first degree murder after deliberation, first degree felony murder, and aggravated robbery. The jury found defendant guilty of reckless manslaughter (a lesser included offense of first degree murder after deliberation), first degree felony murder, and aggravated robbery. The court found that the reckless manslaughter and aggravated robbery convictions were lesser included offenses of felony murder and sentenced defendant to life in prison without parole.

## II. Sufficiency of the Evidence

¶ 7 Defendant contends the evidence was insufficient to prove aggravated robbery because there was no evidence he acted with the intent, if resisted, to kill, maim, or wound Maez. He also contends that, as a result, his felony murder conviction must also be reversed. We disagree.

### A. Standard of Review

¶ 8 We review de novo whether sufficient evidence supports a verdict. *Dempsey v. People*, 117 P.3d 800, 807 (Colo.2005). When the sufficiency of the evidence is challenged on appeal, we must determine whether the evidence, viewed as a whole, and in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable juror that the defendant is guilty of the crime charged beyond a reasonable doubt. *People v. Sprouse*, 983 P.2d 771, 777 (Colo.1999); *People v. McIntier*, 134 P.3d 467, 471 (Colo.App.2005).

### B. Aggravated Robbery

¶ 9 In accordance with section 18–4–302(1)(c), C.R.S.2011, as relevant here, the prosecution was required to prove beyond a reasonable doubt that during the robbery or immediate flight therefrom, defendant had the intent, "if resistance [was] offered, to kill, maim, or wound the person robbed or any other person."

### C. Analysis

¶ 10 It is undisputed that defendant caught and punched Maez. It is also undisputed that Maez suffered blunt force trauma to his head, which resulted in severe swelling of his brain and internal bleeding. The forensic pathology expert testified that although the injuries could have been caused

by a fist alone, the fist very likely would have been broken or severely injured. It is also undisputed that defendant's hands were not broken and did not show signs of serious injury.

¶ 11 Five witnesses testified that defendant returned from the encounter with Maez carrying a stick. Although the stick was not found, witnesses testified that both the stick and defendant's hand were bloody. Witnesses also testified that personal property belonging to Maez was missing when he arrived at the hospital.

¶ 12 Defendant argues that a reasonable juror could not find that he intended to kill, maim, or wound Maez because there was *no evidence* that (1) defendant knew Maez's identity when defendant set out after him; (2) the injuries on defendant's hands were consistent with causing Maez's injuries; and (3) defendant started his chase with a stick or other weapon. Such evidence is not necessary to prove aggravated robbery. *See* § 18–4–302(1)(c). In addition, the appropriate weight of any evidence, present or absent, is an issue for the jury. *McIntier*, 134 P.3d at 471.

¶ 13 Reviewing the record as a whole, and in the light most favorable to the prosecution, we conclude that there is sufficient evidence to enable a reasonable juror to find, beyond a reasonable doubt, that defendant intended to kill, maim, or wound Maez.

### III. Defense of Property Instruction

¶ 14 Defendant also contends that the trial court erred when it rejected his jury instruction on the affirmative defense of defense of property. We disagree.

### A. Standard of Review

¶ 15 It is a trial court's duty to instruct the jury on all matters of law. *People v. Munsey*, 232 P.3d 113, 118 (Colo.App. 2009). A defendant is entitled to an affirmative defense instruction when he or she presents "some credible evidence" on the issue addressed in the instruction, so that a reasonable juror could find evidence to support

each element of the defense. *O'Shaughnessy v. People*, 2012 CO 9, ¶ 11, 269 P.3d 1233, 1236. The "some credible evidence" standard requires little evidence for submitting an affirmative defense to the jury. *Id.* at ¶ 12 (noting that the terms "a scintilla of evidence" and "some credible evidence" have been used interchangeably when considering the quantum of evidence necessary to raise an affirmative defense).

¶ 16 The question of whether the defendant has presented "some credible evidence" to support each element of an affirmative defense is a question of law resolved by the trial court. *Id.* at ¶ 13. When the trial court determines that there is no evidence to support one or more elements of an affirmative defense, it is not required to give the instruction because there is no question of fact for the jury to resolve. *Id.* We review the trial court's determinations de novo. *Id.*

### B. Defense of Property

¶ 17 Defendant asked for a jury instruction regarding defense of property. Section 18–1–706, C.R.S.2011, provides:

A person is justified in using reasonable and appropriate physical force upon another person when and to the extent that he reasonably believes it necessary *to prevent* what he reasonably believes to be *an attempt* by the other person to commit theft, criminal mischief, or criminal tampering involving property, but he may use deadly physical force under these circumstances only in defense of himself or another as described in section 18–1–704.

(Emphasis added.)

¶ 18 Here, the issue is whether the record includes evidence that defendant used force to prevent what he reasonably believed to be an *attempt* by Maez to commit theft.[1]

### C. Trial Court Ruling

¶ 19 Defendant asked the court to instruct the jury:

It is an affirmative defense to the crime of aggravated robbery that the defendant:

used deadly physical force in defense of himself or another.

---

1. On appeal, the parties do not argue, and therefore we need not consider, whether defendant

1. used reasonable and appropriate physical force upon another person

2. when and to the extent that he reasonably believed it necessary to prevent

3. what he reasonably believed to be an attempt by the other person to commit theft.

¶ 20 Defendant argued he was entitled to the instruction because "the theft of the property by Matthew Maez wasn't a completed act" and "the evidence is that as [Maez] is running, he doesn't have control of the items; in fact, they are falling out of his pockets." According to defendant, because he and his brother "were in fresh pursuit," Maez's theft of defendant's belongings had not been completed.

¶ 21 The prosecution argued that the evidence showed that when defendant and his brother "came out [of the house] there was nobody running down the street." One of the hosts pointed down the street and told them that the man had run in that direction. According to the prosecutor, defendant

> didn't see Mr. Maez, [and he] didn't know who did it. And Mr. Maez went some distance and with [his friend] stopped up on top of the railroad tracks and waited there. So he was not at the scene, he was not attempting to commit a theft or a robbery at that point, and the act was completed.

¶ 22 The court ruled that under *People v. Goedecke*, 730 P.2d 900 (Colo.App.1986), "any assault in this matter took place after the theft had been accomplished." The court found that Maez's theft of defendant's belongings "had been completed once the items were taken, and when [defendant and his brother] c[a]me out [of the house, Maez] was down the street."

### D. Analysis

¶ 23 Theft is knowingly obtaining or exercising control over anything of value of another without authorization and with the requisite intent. *See* § 18–4–401(1), C.R.S.2011. In *Goedecke*, the defendant allegedly owed a man money and gave him food stamps as partial payment. The man immediately tore up the food stamps, thus exercising control and permanently depriving the defendant of them. The man then drove away. "Some time later," when the man was no longer in the car, "he came upon" the defendant and another man. *Goedecke*, 730 P.2d at 901. The defendant and the other man grabbed two wrenches and beat him with the wrenches. A division of this court concluded that the assault took place *after* the alleged theft of the food stamps had already occurred, and, therefore, there were "no grounds upon which the jury could find that [the] defendant reasonably believed that force was necessary to *prevent* an attempted theft." *Id.* "[E]ven rightful owners should not be permitted to . . . use force to regain their property, once it has been taken." *People v. Scearce*, 87 P.3d 228, 231 (Colo.App.2003) (quoting *State v. Miller*, 622 N.W.2d 782, 786 (Iowa Ct.App. 2000)). Thus, we must determine whether a reasonable juror could have found that defendant acted to prevent an attempt to steal property from his car.

¶ 24 Here, Maez did not take the property directly from the defendant and did not complete the theft by destroying the property in defendant's presence. In addition, unlike in *Goedecke*, where the thief came upon the defendant some time later, here defendant set out in fresh pursuit to find and catch Maez. Nonetheless, we conclude that the theft was completed when Maez not only exercised control of the property, but moved it away from an area within defendant's control.

¶ 25 Thus, defendant could no longer *prevent* the theft. *See Goedecke*, 730 P.2d at 901 (no instruction required where defendant present at theft, but did not confront thief until some hours later and at a distant location). Rather, defendant was trying to apprehend the thief and recover the property.

¶ 26 We conclude that the trial court did not err when it did not give an instruction regarding defense of property.

¶ 27 The judgment is affirmed.

Judge GRAHAM and Judge BOORAS concur.