# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 48949-0-II |
| Respondent, | |
| v. | PART PUBLISHED OPINION |
| STEVEN BRIAN YELOVICH, | |
| Appellant. | |

MAXA, J. – Steven Yelovich appeals his conviction for violating a felony no-contact order. The conviction related to his assault of Faith De Armond, the protected party. Yelovich claims that his altercation with De Armond occurred when he was defending his property – attempting to recover a cell phone that he alleges De Armond took from him.

Yelovich argues the trial court erred by refusing to give a defense of property jury instruction. In the published portion of this opinion, we hold that the evidence did not support a defense of property jury instruction because Yelovich used force not to prevent his property from being taken, but to recover property after the taking had been completed and the property had been removed from his area of control. In the unpublished portion, we reject Yelovich's additional argument that the trial court erred in allowing the State to reopen its case after he testified.

Accordingly, we affirm Yelovich's conviction.

FACTS

*Assault and Arrest*

Yelovich and De Armond dated for several years before breaking up. A domestic violence no-contact order was in place that prevented Yelovich from contacting De Armond.

According to Yelovich, on the morning of June 7, 2015, he was at his son's house packing boxes in the garage and moving them to his car. While he was working, Yelovich left several items unattended in his car, which had a broken passenger-side window. One of the items was a cell phone. As Yelovich was taking a box to his car, he caught a glimpse of someone walking down the street. At that time, he could not tell who the person was. When he reached his car, he noticed that his cell phone and other items were missing.

Yelovich walked to the middle of the street and saw that the person in the street was De Armond. De Armond was repeatedly turning around and looking back toward Yelovich. Yelovich immediately believed that she had taken his cell phone.

Yelovich got into his car and chased after De Armond. He drove to the end of the road a few blocks away and turned the corner before encountering De Armond. He parked his car, got out, and demanded that she return his phone. Yelovich knew at that point that he was violating the no-contact order. But he believed that the action was necessary before De Armond disappeared with his phone.

Yelovich grabbed De Armond's purse strap and attempted to pull the purse from her, believing that the cell phone was in the purse. De Armond resisted, holding tightly to her purse.

In the struggle, De Armond fell to the ground. After a bystander intervened, law enforcement officers arrived and arrested Yelovich.

The State charged Yelovich with violating the no-contact order. The information alleged that Yelovich had assaulted De Armond, making the violation a felony under RCW 26.50.110(4).[1]

*Trial and Conviction*

At trial, the witnesses testified to the facts recited above. Yelovich proposed a jury instruction that included both defense of property and self-defense components. The trial court ruled as a matter of law that a defense of property instruction did not apply because Yelovich was not using force to prevent the cell phone from being taken; he was trying to recover the cell phone that was no longer in his possession.

A jury convicted Yelovich of the felony contact order violation.[2] Yelovich appeals his conviction.

ANALYSIS

Yelovich argues that the trial court erred by refusing to give a defense of property jury instruction.[3] We disagree.

---

[1] This section was amended in 2017, but the amendments do not affect our analysis. Consequently, we cite to the current version of the statute.

[2] The jury also convicted Yelovich of a bail jumping charge. He does not challenge that conviction on appeal.

[3] Yelovich also states in his assignments of error that the trial court erred in refusing to instruct the jury on self-defense. However, he does not make any argument in his brief regarding a self-defense instruction. Therefore, we not address this issue. *See* RAP 10.3(a)(6); *State v. Bello*, 142 Wn. App. 930, 932 n.3, 176 P.3d 554 (2008).

No. 48949-0-II

A.    LEGAL BACKGROUND

Violation of a domestic violence no-contact order typically is a gross misdemeanor.

RCW 26.50.110(1)(a).  The violation becomes a felony if it involves an assault.  RCW

26.50.110(4).

The State alleged that Yelovich assaulted De Armond by using force against her.  As a

defense to assault, the defendant may raise a defense that he or she used force while defending

his or her personal property.  *Peasley v. Puget Sound Tug & Barge Co.*, 13 Wn.2d 485, 506, 125

P.2d 681 (1942).  RCW 9A.16.020(3) states that the use of force is not unlawful

> [w]henever used by a party about to be injured, or by another lawfully aiding him
> or her, in preventing or attempting to prevent an offense against his or her person,
> or a malicious trespass, or other *malicious interference with* real or *personal
> property lawfully in his or her possession*, in case the force is not more than is
> necessary.

(Emphasis added.)

"A criminal defendant is entitled to an instruction on his or her theory of the case if the

evidence supports the instruction."  *State v. Werner*, 170 Wn.2d 333, 336, 241 P.3d 410 (2010).

Regarding a self-defense or defense of another theory, a defendant is entitled to an instruction if

there is "some evidence" to support that theory.  *Id.* at 336-37 (self-defense); *see also State v.

Marquez*, 131 Wn. App. 566, 578, 127 P.3d 786 (2006) (defense of another).  The "some

evidence" threshold is a low burden; the evidence does not even need to create a reasonable

doubt.  *State v. George*, 161 Wn. App. 86, 96, 249 P.3d 202 (2011).  Because defense of property

is addressed in the same statute as self-defense and defense of another, we apply the same rule to

defense of property.

4

The trial court must evaluate evidence supporting a defense of property instruction "from the standpoint of a reasonably prudent person who knows all the defendant knows and sees all the defendant sees." *State v. Read*, 147 Wn.2d 238, 242, 53 P.3d 26 (2002) (addressing self-defense). This analysis involves both subjective and objective components. *Id.* at 242-43. For the subjective component, the court must "place itself in the defendant's shoes and view the defendant's acts in light of all the facts and circumstances the defendant knew when the act occurred." *Id.* at 243. For the objective component, the court must "determine what a reasonable person would have done if placed in the defendant's situation." *Id.* The ultimate question is whether the defendant subjectively believed that the use of force was necessary and whether that belief was objectively reasonable. *See id.*

Whether the evidence is sufficient to support a defense of property instruction is a question of law that we review de novo. *See State v. Fisher*, 185 Wn.2d 836, 849, 374 P.3d 1185 (2016) (stating rule for self-defense). In deciding whether such an instruction should have been given, we must view the evidence in the light most favorable to the defendant. *Id.* And the defendant can rely on any evidence produced at trial to support the defense, even if inconsistent with his or her own testimony. *Id.* at 849-51.

B.     USE OF FORCE TO RECOVER PROPERTY

Yelovich asserted as a defense that he was justified in using force against De Armond because she had taken his cell phone. However, Yelovich's own testimony established that he used force in an attempt to *recover* the cell phone after De Armond allegedly had taken it and had left the immediate area, not to prevent De Armond from taking the cell phone in the first instance. The issue here is to what extent a defendant can rely on the defense of property as a

5

defense when he or she uses force to recover property that already has been taken and is no longer in his or her possession.

    1.    Statutory Language

RCW 9A.16.020(3) states that the use of force is not unlawful "[w]henever used by a party about to be injured . . . in preventing or attempting to prevent . . . malicious interference with . . . personal property lawfully in his or her possession."

Interpretation of a statute is a question of law that we review de novo. *State v. Evans*, 177 Wn.2d 186, 191, 298 P.3d 724 (2013). The primary goal of statutory interpretation is to determine and give effect to the legislature's intent. *State v. Larson*, 184 Wn.2d 843, 848, 365 P.3d 740 (2015). To determine legislative intent, we first look to the plain language of the statute. *Id.* We consider the language of the provision in question, the context of the statute in which the provision is found, related provisions, and the statutory scheme as a whole. *Id.* If the plain meaning of a statute is unambiguous, we must apply that plain meaning as an expression of legislative intent. *Id.*

The plain language of RCW 9A.16.020(3) establishes that an owner of property cannot use force to defend that property after the interference with the property has been completed. First, the property owner can use force only if he or she is "about to be injured."[4] RCW 9A.16.020(3). Once the interference with the property has been completed, the owner no longer is *about to be* injured; he or she *has been* injured.

---

[4] That injury includes injury to the property, not just injury to the defendant himself. *See State v. Bland*, 128 Wn. App. 511, 513, 116 P.3d 428 (2005).

Second, the property owner can use force only in "preventing or attempting to prevent" the interference. RCW 9A.16.020(3). An action taken to prevent interference must occur before the interference has been completed. Defense of property by definition is defensive rather than offensive. Once the interference with the property has been completed, the owner's use of force is to *recover* the property, not to prevent the interference.

Third, the property owner can use force only if the property is "lawfully in his or her possession." RCW 9A.16.020(3). Once the interference with the property has been completed, another person has obtained possession of the property and the owner necessarily no longer has possession.

Although the statutory language is clear, the question presented under the facts of this case is when an interference with property has been "completed."

2. Case Law

Only one published Washington case has addressed a property owner's right to use force to recover property that another person has taken. In *State v. Walther*, the defendant loaned his car to the victim, who failed to return it that day. 114 Wn. App. 189, 190, 56 P.3d 1001 (2002). The next morning, the defendant went looking for the car and, upon finding the victim sleeping in it, fired multiple shots into the windshield. *Id.* at 190-91. The defendant claimed that he was "merely trying to recover his car." *Id.* at 191.

In a brief analysis, this court focused on the language of RCW 9A.16.020(3). *Id.* at 191-92. First, the court stated that the defendant was not "about to be injured" when he found the victim sleeping in the car. *Id.* at 192. Second, the court stated that the car was in the victim's

7

possession, not the defendant's possession, when the defendant fired the shots. *Id.* Therefore, the court held that the defendant was not entitled to a defense of property instruction.[5] *Id.*

But the facts here are different than in *Walther*, where the interference with the defendant's car clearly had been "completed"; it had been taken the day before. Here, Yelovich did not wait until the next day to attempt to recover his property; he gave almost immediate pursuit. Therefore, we turn to cases in other jurisdictions to determine when an interference with property has been "completed."

Two cases addressed situations somewhat similar to the facts here, both involving statutory provisions for defense of property similar to Washington's.[6] In *Yocum v. State*, a woman was inside the defendant's house, where some money was lying on the table. 777 A.2d 782, 783 (Del. 2001). Shortly after the woman left the house, the defendant believed that she had stolen some of the money. *Id.* He ran outside, threatened the woman with a gun, and searched her at gunpoint. *Id.* The Delaware Supreme Court held that the defendant was not entitled to a defense of property instruction, noting that the defendant did not observe the alleged theft in progress and that the woman was already outside the house when the defendant accosted her. *Id.* at 784. The court stated,

> [T]he use of force in the protection of property does not extend to efforts to retrieve the property after the theft is accomplished. . . . To hold otherwise would sanction

---

[5] The court also noted that the force used was more than necessary, in violation of the provision in RCW 9A.16.020(3) that the defendant may not use more force than is necessary. *Walther*, 114 Wn. App. at 192.

[6] *See* Colo. Rev. Stat. § 18-1-706 (allowing reasonable force when "necessary to prevent what [the defendant] reasonably believes to be an attempt by the other person to commit theft"); 11 Del. C. § 466(a)(3) (allowing reasonable force "[t]o prevent . . . any trespassory taking of tangible, movable property in the defendant's possession").

a form of vigilantism in which a property owner could employ force in pursuing a suspected thief or trespasser.

*Id.*

In *People v. Oslund*, a group of people, including the defendant, had been socializing. 2012 COA 62, 292 P.3d 1025, 1027 (Colo. Ct. App.). One member of the group then left and was discovered taking items from inside the defendant's car. *Id.* When the person fled, the defendant gave pursuit, caught up with the person, and punched him in the course of retrieving the items. *Id.* The Colorado Court of Appeals concluded that the defendant was not entitled to a defense of property instruction. *Id.* at 1029. The court stated that "the theft was completed when [the assault victim] not only exercised control of the property, but *moved it away from an area within defendant's control*." *Id.* After that point, the defendant was trying to apprehend the thief, not to prevent the theft. *Id.*

Other cases have applied a general rule that a defense of property defense is not available unless a criminal act was committed in the defendant's presence. *State v. Nelson*, 329 N.W.2d 643, 646-47 (Iowa 1983); *State v. Marley*, 54 Haw. 450, 509 P.2d 1095, 1108 (1973). The court in *Nelson* emphasized that "the purpose of the [defense of property] statute is not to recover property but to prevent wrongful interference with it." 329 N.W.2d at 646.

3.  Scope of Defense of Property

Based on the language of RCW 9A.16.020(3) and relevant case law, we hold that an owner of property cannot use force to defend that property when (1) the interference with the property occurs when the defendant was not present, (2) the interference has been completed and

9

the property is no longer in the owner's possession, and (3) the property has been removed from an area within the owner's control.[7]

> 4. Analysis

Here, application of this three part test and the statutory language show that a defense of property instruction was not appropriate. First, Yelovich was not present at his car when De Armond allegedly removed the cell phone. He discovered that the cell phone was gone only after it already had been taken. Second, at that point De Armond had completed the alleged taking and had possession of the phone. Third, De Armond had left the area of Yelovich's control – his car – and was a few blocks away. Therefore, the undisputed evidence shows that De Armond's theft of Yelovich's cell phone, if it occurred, already had been completed when Yelovich chased after De Armond and accosted her. Yelovich was attempting to recover the cell phone, not to prevent its theft.

Focusing on the statutory language, Yelovich was not about to be injured when he accosted De Armond; he already *had* been injured through the loss of his cell phone. He was not attempting to prevent a theft; the theft already had occurred. And Yelovich no longer had possession of the cell phone; the phone allegedly was in De Armond's possession. Therefore, defense of property under RCW 9A.16.020(3) cannot apply and there was no evidence to support Yelovich's other proposed instruction.

Yelovich points out that a person is immune from civil liability under tort law for using force to recover stolen personal property. *See* RESTATEMENT (SECOND) OF TORTS § 100 (AM.

---

[7] We do not address the scope of the defense of property defense when the defendant's property is taken in his or her presence and he or she immediately gives pursuit.

LAW. INST. 1965) (allowing use of force to retake possession of chattel); *id.* § 103 (requiring force to be used "promptly after his dispossession or after his timely discovery of it"). But principles of civil liability do not necessarily apply in criminal cases. *See State v. Ewing*, 102 Wn. App. 349, 353, 7 P.3d 835 (2000) ("The concepts of the civil law are compensatory, not punitive, and are not easily imported into the penal statutes."). Here, RCW 9A.16.020(3) does not allow criminal defendants to use force to recover stolen property.

We hold that the defense of property defense did not apply to Yelovich's use of force against De Armond as a matter of law. Accordingly, we hold that the trial court did not err by refusing to give a defense of property jury instruction.

## CONCLUSION

We affirm Yelovich's conviction.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

In the unpublished portion of this opinion, we address Yelovich's argument that the trial court erred by allowing the State to reopen its case for De Armond to testify after the State had rested and after Yelovich had testified. We disagree.

## ADDITIONAL FACTS

At trial, the State called several witnesses to testify, including a witness to the altercation and the responding law enforcement officers. The State included De Armond in its witness list, but she did not testify in the State's case-in-chief because the State could not locate her. The State rested.

11

Yelovich then testified about chasing after De Armond because he believed that she had taken his cell phone, as discussed above. Yelovich denied hitting De Armond. Yelovich rested, and the court adjourned for the weekend.

The State realized that De Armond was in custody and was available to testify. The State admitted that it should have known before the trial started that De Armond was in custody and could be brought to court. The State moved to reopen its case to present her testimony. Yelovich objected, arguing that the State was at fault and that he would be prejudiced because he testified based on the understanding that De Armond would not.

The trial court allowed the State to reopen its case and call De Armond as a rebuttal witness. The court stated that her testimony would be limited to rebutting Yelovich's testimony concerning the interaction between De Armond and Yelovich. The court allowed defense counsel to interview De Armond briefly before she testified.

De Armond testified that she had been talking with Yelovich and that she left on foot because he was starting to become violent. She stated that she started to run when she saw Yelovich getting into his car. Yelovich caught up with her, pushed her to the ground, and tried to take her purse.

Yelovich then testified very briefly in surrebuttal about his car.

ANALYSIS

A.    REOPENING THE STATE'S CASE

Yelovich argues that the trial court erred in allowing the State to reopen its case after both parties had rested and the State was able to locate De Armond. We disagree.

12

The decision to grant a motion to reopen a proceeding to allow a party to introduce additional evidence is within the trial court's discretion. *State v. Sanchez*, 60 Wn. App. 687, 696, 806 P.2d 782 (1991). We review that decision for manifest abuse of discretion, which is discretion exercised on untenable grounds or for untenable reasons. *Id.*

To demonstrate that a ruling on a motion to reopen was reversible error, the moving party must show both abuse of discretion and prejudice. *State v. Brinkley*, 66 Wn. App. 844, 848, 837 P.2d 20 (1992). Courts have held that it is not an abuse of discretion to allow the State to reopen its case after the defendant has rested for a variety of reasons, including to allow the prosecution to present further evidence to respond to a motion to dismiss based on insufficiency of the evidence, to address a specific question of the trial court in a bench trial, and to address a question by the jury. *See id.*

In *Brinkley*, this court stated that deciding whether to allow the State to reopen its case depends to some extent on whether there would be any potential for unfairness to the defendant and whether the defendant would be unfairly disadvantaged. *Id.* at 850. Relevant factors include (1) whether the defendant had excused witnesses who would have rebutted the new evidence; (2) whether the State had deliberately withheld evidence; (3) whether the defendant's case suffered more harm than had the evidence been offered at the proper time; (4) whether the trial court provided time for the defendant to continue the case, interview additional witnesses, and put on rebuttal witnesses; (5) whether the new evidence was highly technical; and (6) whether the nature of the testimony and the stage of the trial might place undue emphasis on it. *Id.* at 850-51. Significantly, the fact that the additional evidence the State submits after reopening its case negatively impacts the defendant's case is not a relevant factor. *See id.* at 850.

Yelovich makes four arguments in support of his claim that the trial court abused its discretion in allowing the State to reopen his case. First, he argues that he decided to testify – to waive his right not to testify – based on his belief that De Armond would not testify. But he does not explain how De Armond testifying would have affected his decision, and does not allege that his decision to testify unfairly prejudiced him in some way.

Second, Yelovich argues that he had limited time to interview De Armond before she testified and that she was nonresponsive when interviewed. This factor may tend to favor Yelovich. But De Armond was listed on the State's witness list, and therefore Yelovich should have been prepared for her testimony. And the nature of De Armond's testimony was not a surprise to Yelovich; a police officer's notes of his interview with her after the incident were available before trial.

Third, Yelovich argues that De Armond was the last person to testify in the case, which placed an undue and unfair emphasis on her testimony. But De Armond was not the last witness; the trial court allowed Yelovich to testify after her in surrebuttal. Although Yelovich's surrebuttal testimony was brief, he had the opportunity to counter De Armond's testimony.

Fourth, Yelovich argues that the State's failure to realize when the case began that De Armond was in custody and was available to testify constituted mismanagement. But the trial court specifically found that this situation involved simple neglect and did not involve any trickery or a deliberate decision to hold back De Armond's testimony.

Considered as a whole, the various factors support the trial court's decision. Yelovich has not demonstrated that reopening the State's case for De Armond to testify caused any

14

No. 48949-0-II

unfairness, disadvantage, or prejudice. Accordingly, we hold that the trial court did not abuse its discretion in allowing the State to reopen its case.

B.     APPELLATE COSTS

Yelovich asks that we refrain from awarding appellate costs if the State seeks them. We decline to consider the issue. A court commissioner will determine whether to award costs under RAP 14.2 if the State decides to file a cost bill and if Yelovich objects to that cost bill.

CONCLUSION

We affirm Yelovich's conviction.

_____
MAXA, J.

We concur:

_____
WORSWICK, J.

_____
BJORGEN, C.J.

15